Filed 7/22/13  In re Alonso A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8,1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ALONSO A., a Person Coming Under the Juvenile Court Law. | B242031 |
| | (Los Angeles County Super. Ct. No. PJ49062) |
| THE PEOPLE, Plaintiff and Respondent, v. ALONSO A., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Morton Rochman, Judge.  Affirmed as modified.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Lawrence M. Daniels and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Alonso A. appeals from the order declaring him a ward of the juvenile court after the court sustained petitions alleging he had made criminal threats and carried a concealed dirk or dagger. He contends the evidence is insufficient his threat caused the two victims to suffer sustained fear and the seizure of his knife was the fruit of an unlawful detention and search. We affirm the order as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Petitions*

A petition was filed on March 13, 2012 pursuant to Welfare and Institutions Code section 602 alleging Alonso, then 15 years old, had committed three felonies on March 11, 2012: vandalism (Pen. Code, § 594, subd. (a), count 1) and making criminal threats to his mother and father (Pen. Code, § 422, subd. (a), counts 2 & 3). A second delinquency petition was filed the following day alleging Alonso had unlawfully carried a concealed dirk or dagger (Pen. Code, § 21310) on March 3, 2012. Alonso denied the allegations in both petitions.

2. *Jurisdiction Hearing on the March 11, 2012 Offenses*

   a. *Summary of the evidence*

Alonso was arrested on March 11, 2012 following an incident at his family home. Alonso's father told Los Angeles Police Officer Jose Arredondo that Alonso had been angry and agitated that night. Alonso and his mother argued, and he began throwing things around the apartment. This was not the first time Alonso had behaved in this way. His father became frightened and locked himself in a room with Alonso's mother after Alonso punched holes in a wall and a door. Alonso banged on the door of the room and said to his parents, "If you don't open up this door, I'm going to get my homies, my friends, and shoot you with a 380." He then demanded his parents give him money or he would "trash the place." At some point his parents telephoned the police. After Alonso was taken into custody, Officer Arredondo overheard him telling his mother in a telephone call, "Please help me. Don't tell them that I threatened you guys. I don't want to go to jail."

2

Alonso's father testified, because Alonso had failed to take his medication for bipolar disorder, he was acting "a little rebellious" that night. He punched some holes in a door and a wall and made threats typical of those he had made in the past when he had not taken his medication. The father explained Alonso did not threaten to have him shot by gang members although he had made that threat in the past. Alonso's father had not been frightened at the time because his son never knew what he was saying when off his medication. He and his wife had contacted police that night so Alonso could receive a psychological assessment.

Alonso's mother testified Alonso had punched holes in a wall and a door. She recalled telling police about locking herself in a room because she was afraid of Alonso. However, he had not threatened to have her shot by gang members.

At the close of the People's evidence, Alonso's counsel moved to dismiss the criminal threat allegations pursuant to Welfare and Institutions Code section 701.1, arguing there was insufficient evidence Alonso's threat had caused his parents to suffer sustained fear. The juvenile court denied the motion. Alonso neither testified nor introduced other evidence in his defense.

b. *Juvenile court's findings*

Following argument by counsel, the juvenile court found the vandalism and criminal threat allegations true and declared the offenses misdemeanors pursuant to Penal Code section 17, subdivision (b). Disposition was deferred pending adjudication of the March 14, 2012 petition.

3. *Suppression Motion and Jurisdiction Hearing on the March 3, 2012 Offense*

a. *Summary of the evidence*

Alonso's motion to suppress the knife recovered from his pocket was heard in conjunction with the jurisdiction hearing on the March 3, 2012 offense. Los Angeles Police Officer Chris Edwards, a gang investigator and the People's only witness at the hearing, testified he and his partner were on routine patrol on the afternoon of March 3, 2012. The officers drove by an alley, which was a known location for gang crimes and narcotics activity, and saw Alonso and another young man; both were wearing baggy

3

white T-shirts, baggy tan pants and black tennis shoes, clothing consistent with gang attire. When Edwards and his partner made a U-turn and entered the alley in their patrol car, they could no longer see the youths. The officers decided to search for them on foot. As they stepped out of the patrol car, they immediately detected a strong odor of marijuana. They also noticed numerous, fresh, gang-related graffiti ("tagging") on the walls, dumpsters and light posts. Shortly thereafter, the officers discovered Alonso and his companion crouched down next to a dumpster, apparently in an effort to conceal themselves. Edwards recognized Alonso from prior contacts on the street as a self-identified gang member. He ordered the young men to stand, place their hands on their heads and face the alley wall. Alonso and his companion complied and were handcuffed.

To ensure his safety, Officer Edwards decided to conduct a pat search of Alonso and his companion for weapons. He based this decision on his knowledge that Alonso, a gang member, and his companion were in an area of gang-related crimes and narcotics activity; they were wearing baggy clothing that could conceal a weapon; and gang members and narcotics dealers typically carry weapons to defend themselves or to use offensively against others.

During the pat search, Officer Edwards felt what was possibly a knife in Alonso's pocket. Edwards retrieved the object, a knife (or "box cutter") with a folded blade that could be released with a flick of the wrist. In addition, in Alonso's pants pocket the officer found a clear plastic bag containing what appeared to be marijuana residue.

At the close of the People's evidence, the juvenile court heard argument by counsel and denied Alonso's motion to suppress. Alonso neither testified nor presented other evidence in his defense.

b. *Juvenile court's findings*

The juvenile court found true the allegation Alonso was unlawfully carrying a concealed dirk or dagger and declared the offense a felony.

4. *Disposition Hearing*

At the disposition hearing on the two petitions, the juvenile court declared Alonso a ward of the court, ordered him to be suitably placed and calculated his maximum term of confinement as four years.

## DISCUSSION

1. *The Evidence Is Insufficient To Support the Finding Alonso Made Criminal Threats*

a. *Standard of review*

The same standard governs review of the sufficiency of evidence in juvenile cases as in adult criminal cases: "[W]e review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

###### a. *Alonso's threat did not cause his parents to be in sustained fear for their safety*

Penal Code section 422 provides a criminal threat occurs when a person "willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety." "Sustained fear" as an element of this crime means "a period of time that extends beyond what is momentary, fleeting or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156; see CALCRIM No. 1300.)

Without disputing the People's proof of the other elements of the offense, Alonso contends the evidence did not establish the element of sustained fear. We agree and modify the findings from making criminal threats to attempts to make criminal threats. (See *People v. Jackson* (2009) 178 Cal.App.4th 590, 597 ["a defendant [commits an] attempted criminal threat where, with the requisite intent, he makes a sufficient threat orally, directly to the victim, but . . . where, 'for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear'"]; see generally *People v. Toledo* (2001) 26 Cal.4th 221.)

To be sure, the record established that both parents feared Alonso the night of March 11, 2012. According to Officer Arredondo, Alonso's father was so frightened in witnessing his son put his fists through a wall and a door that he locked himself in a room with Alonso's mother. Alonso's mother acknowledged she had told police her son's violent behavior scared her. However, the People failed to elicit testimony from Officer Arredondo or anyone else that either parent experienced sustained fear as a result of hearing Alonso's threat to have them shot. To the contrary, Alonso's father denied

6

Alonso had made such a threat on the night of March 11, 2012. He also testified similar threats previously made by his son did not scare him because Alonso never knew what he was saying when he had not taken his bipolar medication. Similarly, Alonso's mother testified her son had never made the threat to her.

Nonetheless, the People argue it was reasonable for the court to infer under the circumstances that Alonso's parents had in fact suffered sustained fear because of his threat. The People emphasize the threat was unambiguous and directly communicated to the parents; it was similar to threats he had made in the past, which were also accompanied by "out of control" behavior; Alonso was a gang member; and his parents remained hidden behind a locked door until police arrived. To the extent the People's assertions are supported by the record,[1] they adequately support the objective element of the offense—it would be reasonable for someone hearing this threat to experience sustained fear—but the evidence is insufficient to satisfy the additional subjective element—the targets of this threat heard it and were actually placed in a state of sustained fear.

As discussed, Alonso does not dispute there was proof beyond a reasonable doubt he intended to make a criminal threat and committed acts in furtherance of that threat. Accordingly, the lack of evidence of the sustained fear element alone does not justify dismissal of those allegations in the March 13, 2012 delinquency petition, but rather requires that we modify the juvenile court's adjudication and reduce the criminal threat

[1]    No evidence was presented at the jurisdiction hearing on the March 13, 2012 petition that Alonso was affiliated with a gang, let alone that his parents knew he was a gang member or feared retaliation by gang members acting on their son's behalf. The Attorney General's attempt to overcome this evidentiary gap by asserting the parents would have recognized Alonso's reference to "homies" as a colloquialism for his fellow gang members not only lacks support in the record but also ignores the wide use of that term in popular culture in a variety of nongang contexts. Similarly, the Attorney General's summary of the evidence notwithstanding, the record does not indicate whether Alonso's parents called the police before or after the threat was made or stayed in the locked room until the police arrived at their home.

7

findings to attempted criminal threats. (See *People v. Jackson, supra*, 178 Cal.App.4th at p. 597; *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 610-611.)

2. *The Suppression Motion Was Properly Denied*

a. *Standard of review*

In reviewing the ruling on a motion to suppress, the appellate court defers to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. James* (1977) 19 Cal.3d 99, 107.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*James,* at p. 107.) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People v. Zamudio, supra,* 43 Cal.4th at p. 342.)[2]

b. *The law governing investigatory detentions and pat searches*

Police contacts with individuals fall into "three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

A detention occurs within the meaning of the Fourth Amendment when the officer, by means of physical force or show of authority, in some manner temporarily restrains the individual's liberty. (*Brendlin v. California* (2007) 551 U.S. 249, 254 [127 S.Ct. 2400, 168 L.Ed.2d 132]; *People v. Zamudio, supra,* 43 Cal.4th at p. 341.) A police officer may detain an individual only if the officer has a reasonable, articulable suspicion the detainee has been, currently is or is about to be engaged in criminal activity. (*Terry v. Ohio* (1968) 392 U.S. 1, 21 [88 S. Ct. 1868, 20 L.Ed.2d 889]; see *In re Tony C.*

---

[2] Whether relevant evidence obtained by assertedly unlawful means must be excluded is determined exclusively by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const., art. I, § 28, subd. (f)(2); *People v. Lenart* (2004) 32 Cal.4th 1107, 1118.)

8

(1978) 21 Cal.3d 888, 893.) To satisfy this requirement, the police officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231; *United States v. Sokolow* (1989) 490 U.S. 1, 7 [109 S.Ct. 1581, 104 L.Ed. 2d 1].)

When a police officer reasonably suspects a crime has been committed and the individual he has detained may be armed and dangerous, the officer may "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (*Terry v. Ohio, supra,* 392 U.S. at p. 30.) "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." (*Adams v. Williams* (1972) 407 U.S. 143, 146 [92 S.Ct. 1921, 32 L.Ed.2d 612].) To justify a pat search for weapons, the officer need not have probable cause to arrest the individual nor "be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry*, at p. 27.) The officer's reasonable suspicion must be directed at the individual to be searched (*Ybarra v. Illinois* (1979) 444 U.S. 85, 95 [100 S.Ct. 338, 62 L.Ed.2d 238]) and must be based on specific, articulable facts (*Terry,* at p. 21). As with an investigatory detention, the determination whether an officer had reasonable suspicion to conduct a pat search for weapons is based on the totality of the circumstances. (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.)

c. *The detention and pat search* of *Alonso were lawful*

Officer Edwards detained Alonso and his companion after locating them in the alley hiding next to a dumpster, believing they may have just used marijuana and vandalized parts of the alley. The officer's suspicion of ongoing criminal activity was based on the following articulable facts: (1) the alley was known for gang-related crimes and narcotics activity; (2) Alonso was a gang member; (3) a strong odor of marijuana was emanating from inside the alley and fresh gang-related graffiti was on the walls, dumpster and light pole; (4) Alonso and his companion wore baggy clothing capable of concealing

9

contraband; and (5) the youths hid from Edwards and his partner when they saw the officers. Edwards was justified in detaining Alonso to confirm or dispel his suspicion Alonso had been recently involved in illegal activity. (See, e.g., *Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [120 S. Ct. 673, 145 L. Ed. 2d 570] [presence in high-crime area and evasive behavior are relevant factors in determining reasonable suspicion]; *People v. Souza , supra*, 9 Cal.4th at p. 241 [same]; *United States v. Lamela* (1st Cir. 1991) 942 F.2d 100, 102 [wearing baggy clothing suitable for concealment of contraband in combination with other factors, may raise reasonable suspicion].)

There were also specific and articulable facts to support Officer Edwards's decision to conduct a pat search of Alonso for officer safety. As Edwards testified, Alonso was a known gang member, detained in gang territory after attempting to evade the officers and in the company of another youth who was a probable gang member. The two young men wore baggy clothing that could conceal a weapon, and, as gang members, were likely armed. (See *In re H.M.* (2008) 167 Cal.App.4th 136, 146 ["[o]fficers in an area plagued by violent gang activity need not ignore the reality that persons who commit crimes there are likely to be armed"].) Based on the totality of the circumstances, the officer reasonably believed his safety was at risk; the decision to pat search Alonso was justified. (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957 ["The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations."].) Alonso's suppression motion was properly denied.

10

## DISPOSITION

The juvenile court's findings in counts 2 and 3 are modified to findings Alonso committed two misdemeanor offenses of attempting to make a criminal threat, and the maximum term of confinement is reduced to three years eight months (rather than four years).  As modified, the order is affirmed.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.

11