Filed 10/23/15  P. v. Smith-Ihemedu CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C078390 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F06931) |
| v. | |
| SHERIE SMITH-IHEMEDU, | |
| Defendant and Appellant. | |

Defendant Sherie Smith-Ihemedu appeals her judgment of conviction for attempted criminal threats as a lesser included offense of criminal threats.  (Pen. Code, §§ 422 & 664.)[1]  She contends the trial court prejudicially erred by failing to instruct the jury on an element of the crime.  Finding the instructional error harmless beyond a reasonable doubt, we affirm the judgment.

---

[1]  Further undesignated statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant rented a downstairs bedroom in the two-story home of Victoria Christopher. Jasmine Gipson also rented a room from Christopher.

On the morning of October 23, 2013, Christopher had defendant served (by Gipson) with an eviction notice because defendant had not paid rent since June of that year. Defendant came into the house "yelling and screaming" about having been served. Christopher could hear defendant downstairs breaking items from Christopher's ceramics collection.

Later that evening, Christopher, while standing with Gipson at the bottom of the stairs, overheard defendant on the telephone "cackling, circling the kitchen, talking louder and cackling about how she doesn't have to pay any rent." Christopher and Gipson went upstairs to talk about what to do and then went back downstairs to find defendant standing in the kitchen with a serrated knife in her hand. Defendant tried to talk to Christopher about the eviction; when Christopher refused to engage with defendant, she moved toward Christopher and said she would stab Christopher in her sleep. As Christopher and Gipson backed away, defendant told Gipson, " 'I'll stab you too, you fat bitch.' " Defendant then turned and went into her room and closed the door. Christopher and Gipson went quickly upstairs and called the police. They waited in Christopher's bedroom, barricading the door with a chair because the door's lock was broken.

Christopher testified that she felt the threat was credible and feared defendant would actually stab her because defendant had a key to the house and the broken lock on Christopher's bedroom door gave defendant access to stab her in her sleep. She testified that she remained in fear of defendant at the time of trial.

Sacramento Police Officer Jonathan Magner and his partner were dispatched to the scene. When they arrived, they spoke with Christopher and Gipson; both women "seemed concerned and nervous." Magner knocked on defendant's bedroom door

2

repeatedly, but defendant refused to open the door or come out as instructed. The officers finally broke down the door and detained defendant, who continued to be argumentative and uncooperative. Magner found the knife defendant had brandished in the kitchen.

Defendant returned to Christopher's house four days later. She cut the cord to the Internet modem and threatened the two women again.

Defendant was charged with making criminal threats for her (October 23) statement to Christopher (§ 422 -- count one), and misdemeanors for brandishing a knife at Christopher (§ 417, subd. (a)(1) -- count two) and destroying Christopher's personal property (vandalism, § 594, subd. (a) -- count three).

Following a jury trial, defendant was acquitted of the criminal threats charge, but convicted of brandishing, vandalism, and the lesser included offense of attempted criminal threats. The trial court suspended imposition of sentence and placed defendant on five years of formal probation subject to all of the terms and conditions specified in the probation report, including that defendant serve 60 days in county jail.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant challenges only her conviction for attempted threats, arguing that the trial court's omission of an element from the jury instructions was prejudicial error.

The trial court instructed the jury pursuant to the then-current version of CALCRIM No. 460 as follows: "To prove that the defendant is guilty of attempted criminal threats on October 23, 2013, a lesser charge to Count One, the People must prove that: [¶] One, the defendant took a direct but ineffective step toward committing criminal threats; [¶] And two, the defendant intended to commit criminal threats." The

3

court then defined "direct step" and instructed the jury to refer to separate instructions to decide whether defendant intended to commit a criminal threat.**2**

In August 2014, several months *prior* to defendant's trial, the California Supreme Court decided *People v. Chandler* (2014) 60 Cal.4th 508 (*Chandler*). Our high court held that, "when a defendant is charged with attempted criminal threat, the jury must be instructed that the offense requires not only that the defendant have an intent to threaten but also that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Id*. at p. 525.)

In February 2015, two months *after* defendant's trial, CALCRIM No. 460 was modified to conform to the holding in *Chandler* by adding a third element to prove attempted criminal threat, that "[t]he intended criminal threat was sufficient under the circumstances to cause a reasonable person to be in sustained fear." (CALCRIM No. 460; *Chandler, supra*, 60 Cal.4th at p. 525.)

Defendant contends the trial court erred in failing to sua sponte instruct the jury on the third element added by *Chandler*. Specifically, she claims the court was required to tell the jury to consider whether the intended threat was sufficient under the circumstances to cause a reasonable person to be in sustained fear. We agree that this was what *Chandler* requires.

---

**2** The trial court instructed the jury using CALCRIM No. 1300 that, in order to prove defendant guilty of the crime of making a criminal threat, the People were required to prove that (1) defendant "willfully threatened to unlawfully kill or unlawfully cause great bodily injury to [Christopher]"; (2) defendant "made the threat orally"; (3) defendant "intended that her statement be understood as a threat and intended that it would be communicated to [Christopher]"; (4) the "threat was so clear, immediate, unconditional, and specific that it communicated to [Christopher] a serious intention and the immediate prospect that the threat would be carried out"; (5) the "threat actually caused [Christopher] to be in sustained fear for her own safety"; and (6) "[Christopher's] fear was reasonable under the circumstances."

4

A trial court must instruct *sua sponte* on the general principles of law applicable to the case; this includes instruction on lesser included offenses. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149, 154; *People v. Taylor* (2010) 48 Cal.4th 574, 623.) At the time the jury was instructed, *Chandler* was the law in California, but the standard instruction had not yet been updated to reflect the holding. Further, no party called the clarification of the law to the trial court's attention. Nonetheless, the jury was not informed of the three required elements. We now consider whether this error was harmless.

"Under state law, instructional error that withdraws an element of a crime from the jury's consideration is harmless if there is 'no reasonable probability that the outcome of defendant's trial would have been different had the trial court properly instructed the jury.' [Citations.] Under federal law, the 'Fifth Amendment right to due process and Sixth Amendment right to jury trial . . . require the prosecution to prove to a jury beyond a reasonable doubt every element of a crime.' [Citations.] Accordingly, a trial court's failure to instruct on an element of a crime is federal constitutional error that requires reversal of the conviction unless it can be shown beyond a reasonable doubt that the error did not contribute to the jury's verdict. [Citations.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1208-1209; accord, *Chandler, supra,* 60 Cal.4th at 525.)

Defendant contends the trial court's failure to instruct the jury on the additional element was prejudicial. She argues the only plausible theory to support her conviction under the incomplete instruction is that she made a sufficient threat with the requisite intent, which, although received and understood by Christopher, did not actually cause Christopher to be in sustained fear. She asserts that because the jury found defendant not guilty of the greater charge of criminal threats, it disbelieved Christopher was actually in sustained fear.

Defendant's argument fails. Regardless of whether the jury disbelieved Christopher's testimony that she was in fear, and regardless of the reason for the acquittal

5

on the greater charge, in order to properly convict defendant of *attempted* threats, the jury needed only to find that a *reasonable person* would have been afraid. As set forth in *Chandler*, attempt requires "that the defendant have an intent to threaten" and "that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Chandler, supra*, 60 Cal.4th at p. 525.) Stated another way, "if a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*People v. Toledo* (2001) 26 Cal.4th 221, 231.) Thus, even if the jurors disbelieved Christopher's testimony that she was *actually* in sustained fear, if the evidence supports a finding that defendant's threat was sufficient to cause a *reasonable person* to be in sustained fear, beyond a reasonable doubt, the error is harmless.

The evidence supports such a finding beyond a reasonable doubt. Christopher had caused defendant to be served with an eviction notice and had heard defendant yelling and screaming and breaking Christopher's personal property, all inside Christopher's house. Later that evening, defendant, still inside the house, told an unknown person on the telephone that she would not leave the house and then advanced toward Christopher holding a knife and threatening to stab Christopher in her sleep. Contrary to defendant's argument that Christopher's testimony was "riddled with inconsistencies, mistakes and motive," our review of the record does not lead us to conclude that the testimony was suspect such that a "reasonable juror could have failed to find defendant's threat sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Chandler, supra*, 60 Cal.4th at p. 525.)

Further, as the People point out, defendant did not contest the reasonableness of Christopher's fear. Instead, the defense theory at trial appeared to be that defendant

6

never made the threat at all as shown by the purported lies and inconsistencies in Christopher's testimony. Indeed, defense counsel argued in closing that: "[T]his case will rise and fall on Ms. Christopher's testimony and her believability."

Defendant argues prejudice appears because her statements to Christopher were merely an "angry rant," and thus insufficient to cause a reasonable person to be in sustained fear. In support of her claim, defendant relies on *People v. Jackson* (2009) 178 Cal.App.4th 590 (*Jackson*) and *In re Ricky T.* (2001) 87 Cal.App.4th 1132 (*Ricky T.*). Even assuming for the sake of argument that we agree with these cases' respective conclusions, the instant case is distinguishable.

In *Jackson, supra*, 178 Cal.App.4th 590, the victims asked the defendant to leave the rented home where he had been staying. After collecting his things and stepping outside of the house, the defendant became anxious and irritated and mentioned something about getting a rifle and " 'blowing [the victims'] heads off' and 'chopping [the victims] heads off.' " The victims were inside the house and the defendant remained outside, " 'ranting and raving.' " (*Id.* at p. 594.) Then the defendant took his things outside, went back into the house and threatened, " 'I'm going to get an AK-47 and blow all your heads off,' " and then went back outside and sat down. (*Id.* at pp. 594-595.)

The jury in *Jackson* was instructed on the crimes of criminal threat and attempted criminal threat in substantially the same manner as in this case. (*Jackson, supra*, 178 Cal.App.4th at pp. 598-599.) As in this case, the *Jackson* defendant was acquitted of the substantive criminal threat offense and convicted of the attempt offense (*id.* at p. 593) and on appeal claimed the trial court erred by failing to instruct the jury in the same manner as this case. (*Jackson, supra*, 178 Cal.App.4th at p. 595.) The Sixth Appellate District agreed and found the error prejudicial. (*Id.* at pp. 596-600.)

The *Jackson* court explained: "In finding defendant not guilty of the completed crime but guilty of attempt, the jury must have found that defendant made the 'blow-your-head-off' statements and that he intended them to be taken as threats but that one or

7

both of the last two elements of the completed crime was missing, namely that [the victims] did not suffer sustained fear or that their fear was unreasonable under the circumstances. The instruction allowed the jury to find defendant guilty of attempted criminal threats under either of these factual scenarios. And the evidence would support either scenario. The jury might not have believed [the victims] when they stated they actually feared for their lives. Or, the jury might have concluded, since [the victims] were safely inside the house with a telephone to call the police while defendant sat out front, or since defendant's threats were so outlandish, that defendant's statements could not reasonably have caused the victims to suffer sustained fear. The latter scenario is legally insufficient to support conviction of an attempted criminal threat and the former scenario is sufficient only upon finding that a reasonable person could have suffered fear in those circumstances, something the jury was not asked to decide." (*Id*. at p. 600.)

In *Ricky T.*, the minor defendant got angry at a teacher, cursed, and told the teacher, " 'I'm going to get you.' " (*Ricky T., supra*, 87 Cal.App.4th at p. 1135.) The police were not called until the following day. The minor told police he did not intend to sound threatening, but he admitted "getting in [the teacher's] face and saying he would 'kick [his] ass.' " (*Id.* at pp. 1137.) The First Appellate District found insufficient evidence supported the minor's conviction for criminal threats, writing that there was no evidence of any prior history or disagreement or hostility between the minor and his teacher, and the lack of any conduct by the minor to "further the act of aggression" (such as pushing or shoving the teacher) was significant because the threat was vague and not immediate. (*Id.* at p. 1135.) The court also noted there was no indication the teacher felt anything more than momentary fear, and the police were not called until the following day. (*Id.* at pp. 1138-1140.) The panel characterized the minor's threat as "an emotional response to an accident rather than a death threat that induced sustained fear," concluding "an angry adolescent's utterances" were not violations of section 422. (*Id.* at p. 1141.)

8

We need not decide whether we agree with the holdings in *Jackson* and *Ricky T*., because the present case is distinguishable. In *Jackson,* the defendant was not actually holding an AK-47 at the time he made the threat to shoot his victims, and there was no evidence that he planned to obtain one or that he was even able to. His victims were inside the house and he was outside. Here, at the time the charged threat was made, defendant was holding the weapon and was in close proximity to the victim, inside the victim's house and with full access to the victim's bedroom. Earlier that same day, defendant had gone on a rampage in the house, while the victim was home, breaking items from the victim's ceramic collection. Much later, when defendant came home and moments before making the threat, she was pacing and "cackling" and telling someone over the telephone that she was not going to leave. In that context, we can hardly say a threat to stab by an angry person holding a knife is "outlandish."

In *Ricky T.,* the defendant made a vague outburst unaccompanied by any prior or subsequent aggressive conduct. Here, in stark contrast, defendant yelled and screamed and broke Christopher's personal property, and then later that day advanced on her with a knife in hand, inside the very house defendant was refusing to vacate, and threatened to stab her. She then refused to cooperate with the police, continuing to yell and fight, and four days later came to the house again, committed another act of vandalism by severing the Internet connection, and threatened the victim yet again. Although defendant distinguishes her conduct from the "crusade of terror" present in *Chandler*, and we agree that defendant's conduct is less sustained that the conduct seen in that case, it is clearly not merely a vague outburst--neither preceded nor followed by aggressive behavior--as seen in *Ricky T.*

We conclude "defendant's threats were sufficient under the circumstances to cause a reasonable person to be in sustained fear . . . and no reasonable juror could have concluded otherwise." (*Chandler, supra*, 60 Cal.4th at p. 526.) Thus, any instructional error was harmless beyond a reasonable doubt.

9

## DISPOSITION

The judgment is affirmed.

/s/

DUARTE, J.

We concur:

/s/

HULL, Acting P. J.

/s/

BUTZ, J.