[No. H032539. Sixth Dist. Oct. 22, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD LAMAR JACKSON, JR., Defendant and Appellant.

### COUNSEL

David D. Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**PREMO, J.**—Defendant Clifford Lamar Jackson, Jr., was charged with two counts of making criminal threats in violation of Penal Code section 422.[1] A jury found him not guilty of the crimes charged but guilty on both counts of the lesser included offense of attempted criminal threats. (§§ 422, 21a.) On appeal, defendant argues that the trial court's instructions did not adequately apprise the jury of the factual elements required to support the lesser crime. In particular, defendant maintains that the jury should have been instructed that to find him guilty of attempted criminal threat, it must have found that he specifically intended to make a threat that could "*reasonably* cause the person to be in sustained fear for his or her own safety or for his or her family's safety." (*People v. Toledo* (2001) 26 Cal.4th 221, 231 [109 Cal.Rptr.2d 315, 26 P.3d 1051], italics added (*Toledo*).) We agree and reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Rosemary and William Rogers owned a house in Seaside, California, which they had rented to Judith Moore. In or about July 2004, they caused a notice of eviction to be served upon Moore. Moore agreed to move out and

---

[1] Further unspecified section references are to the Penal Code.

terminate her lease. On July 22, 2004, Rosemary and William[2] met Moore and Moore's father at the house in order to inspect the premises and recover the key. The house was empty of most furniture and "piles of things were all over the place." They found defendant, an acquaintance of Moore's, sleeping on the floor in a back bedroom.

Rosemary told defendant he was trespassing and directed him to collect his things and get out. Defendant agreed to leave and began picking up his belongings. After defendant got most of his things outside in the yard, Rosemary heard him mumble that he was a Vietnam veteran and saw him make gestures toward her husband as if to say, " 'What are you looking at? What's your problem?' " When it appeared that defendant had all his things outside, Rosemary stood in the doorway. She did not want defendant to come back into the house "because he started getting anxious and seemed to be getting irritated." "[H]e said he would blow our heads off. And [Moore's] father was there, and her kids, and my husband, and myself when that happened. He was a little irate, just seemed off, and at this point my husband called the cops." Rosemary was not sure, but she believed that defendant had mentioned both "blowing our heads off" and "chopping our heads off." She also thought he said something about a rifle. She was afraid "because he kept getting more anxious." He was angry and raising his voice. Rosemary "feared for everybody's safety who was at the house. I didn't know what he was going to do." In fact, Moore's father had encouraged William to call the police, telling him that defendant "was a very dangerous man."

After William called the police, defendant continued "ranting and raving." Rosemary and William, along with Moore and her family, remained in the front room of the house while defendant paced outside. Although she did not try to leave, or lock herself in a room to get away from defendant, Rosemary did take his threats seriously. She was "afraid for [her] life" and stood close to an iron fireplace poker in the hallway behind her. When asked if she believed defendant was "immediately going to kill" her, Rosemary responded, "I didn't think anything one way or the other, other than I didn't know what he was going to do next." She was in immediate fear for her life.

William also recalled Moore's father warning them to be careful because defendant was "violent." Moore's father told them that defendant once "assaulted someone with a knife." William testified that, after his wife told defendant to leave, defendant became "very agitated, fidgety, kind of going back and forth." After he removed his belongings, he went back in and said, " 'No, I'm not leaving.' " It was then he said, " 'I'm going to get an AK-47 and blow all your heads off.' " He was angry and shouting and may have also

---

[2] For the sake of clarity and ease of reference, and intending no disrespect, we shall refer to Rosemary and William Rogers by their first names.

said he was going to cut their heads off. William called the police and defendant went outside and sat down. William remained on the front porch. He saw no weapon but took defendant's statement "as a viable threat" and kept his eyes on him.

Officer Nicholas Borges responded to the scene. He took statements from Rosemary and William and from Judith Moore. Moore's description of defendant's alleged threats was consistent with what Rosemary and William had reported. When Borges arrested defendant, defendant told him that "[Borges had] fucked up, and that they were going to cut [Borges's] head off."

Judith Moore and her father both testified that they did not hear defendant make any threats. Defendant was "belligerent and rude," according to Judith Moore. And he was not happy about having to leave, according to Moore's father. But "he wasn't raving and going on." Moore's father denied having told William that defendant might be dangerous.

An amended information charged defendant with two counts of making criminal threats (§ 422) and alleged that he had suffered three prior strike convictions (§ 1170.12, subd. (c)(1)) and two prior serious felonies (§ 667, subd. (a)(1)), and that he had committed a felony while out on bail (§ 12022.1). The jury acquitted defendant of the crimes as charged but found him guilty of two counts of attempted criminal threats. Defendant admitted the remaining allegations. He was sentenced to 25 years to life in prison. This appeal followed.

## II. DISCUSSION

### A. An Attempted Criminal Threat Includes a Reasonableness Element

Defendant argues that the trial court erred in failing to instruct the jury, sua sponte, that, in order to find him guilty of attempted criminal threat, it must find that "it would have been reasonable for a person to have suffered sustained fear as a result of the threat under the circumstances of this case." Citing *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1142 [36 Cal.Rptr.2d 235, 885 P.2d 1], the Attorney General argues that the trial court had no duty to modify standard instructions absent a request. But there is no standard instruction for attempted criminal threat. Defendant's argument is that the trial court's instructions excluded one necessary element of the crime. It is the rule that the trial court must instruct, even without request, on all of the elements of an offense. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1].) Accordingly, we shall consider the merits. On

the merits, the Attorney General argues that the crime of attempted criminal threat does not include the reasonableness element defendant describes. We disagree.

The reasonableness of a victim's fear is an element of the completed crime of criminal threat as defined by section 422.[3] The elements of the completed crime are: (1) The defendant willfully threatened to commit a crime that will result in death or great bodily injury to another person. (2) The defendant had the specific intent that the statement be taken as a threat. (3) The threat was on its face and under the circumstances " 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat.' " (4) The threat caused the victim " 'to be in sustained fear for his or her own safety or for his or her immediate family's safety.' " (5) The victim's fear was reasonable under the circumstances. (*Toledo, supra,* 26 Cal.4th at p. 228; see § 422.)

The Attorney General maintains that when a defendant has done everything he needs to do to complete the crime of criminal threat, but he has not achieved his intended result, he has committed an attempted criminal threat regardless of whether or not the intended threat reasonably could have caused the target to suffer sustained fear. We reject the argument because the Supreme Court's definition of the crime of attempted criminal threat expressly includes a reasonableness element.

In *Toledo, supra,* 26 Cal.4th 221, the question before the Supreme Court was whether an attempted criminal threat was a crime at all. *Toledo* held that it was. Consistent with the law pertaining to attempts, *Toledo* held that a defendant is guilty of an attempted criminal threat "whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action." (*Id.* at p. 230.) But *Toledo* qualified this broad definition, explaining that, in view of the elements set forth in section 422, "a defendant acts with the specific intent to commit the offense of criminal threat only if he or she specifically intends to threaten to commit a

---

[3] Section 422 states: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution *so as to reasonably cause the person to be in sustained fear* for his or her own safety or for his or her family's safety." (*Toledo, supra,* at pp. 230–231, italics added.)

■ By way of example, *Toledo* noted that an attempted criminal threat would exist where "a defendant takes all steps necessary to perpetrate the completed crime of criminal threat by means of a written threat, but the crime is not completed only because the written threat is intercepted before delivery to the threatened person." (*Toledo, supra,* 26 Cal.4th at p. 231.) Similarly, a defendant could be guilty of attempted criminal threat where, with the requisite intent, he makes a sufficient threat orally, directly to the victim, but the victim does not understand the threat, or, where, "for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety *even though, under the circumstances, that person reasonably could have been placed in such fear.*" (*Ibid.,* second italics added.) The facts in *Toledo* fell into this last category.

In *Toledo,* the defendant had been charged with making a criminal threat when, during an argument with his wife, he told her, " 'You know, death is going to become you tonight. I am going to kill you.' " When the wife said she did not care, the defendant aimed the point of a pair of scissors at her throat. At trial, the wife testified that she had not been afraid. (*Toledo, supra,* 26 Cal.4th at p. 225.) The jury found the defendant not guilty of making a criminal threat but guilty of attempted criminal threat. (*Id.* at p. 226.) In upholding the conviction, the Supreme Court observed that the jury properly could have found that the defendant's threat "was made with the requisite intent and was the type of threat that satisfied the provisions of section 422 *and reasonably could have caused* [the wife] to be in sustained fear for her own safety. At the same time, however, the jury might have entertained a reasonable doubt [in view of the wife's testimony] as to whether the threat *actually* caused [her] to be in such fear." (*Id.* at p. 235, first italics added.)

■ Thus, as *Toledo* described it, a conviction for attempted criminal threat requires a finding that the defendant specifically intended to engage in the proscribed conduct—to make the type of threat prohibited by section 422—in order to bring about the proscribed consequence—fear that would be reasonable in the circumstances. Indeed, *Toledo*'s description of an attempted

criminal threat encompasses all the elements of the substantive crime except the subjective response of the victim. (*Toledo, supra,* 26 Cal.4th at pp. 230–231.)[4]

■ It is important to remember that the crime of criminal threat, or attempted criminal threat, punishes speech and, consequently, risks offending the First Amendment. But, as *Toledo* explained, penalizing speech does not offend First Amendment principles as long as, " 'the relevant statute singles out for punishment threats falling outside the scope of First Amendment protection.' " (*Toledo, supra,* 26 Cal.4th at p. 233, quoting *In re M.S.* (1995) 10 Cal.4th 698, 710 [42 Cal.Rptr. 2d 355, 896 P.2d 1365].) " '*When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection.*' " (*Toledo, supra,* at p. 233, italics added by *Toledo.*) In drafting the current version of section 422, the Legislature limited the punishment for criminal threats to this type of unprotected speech. (*Toledo, supra,* at p. 233.) Punishment for an attempted criminal threat must reach no further. By insisting that the intended threat be evaluated from the point of view of a reasonable person under the circumstances of the case, we can insure that punishment will apply only to speech that clearly falls outside First Amendment protection.

■ We conclude that in order to support a conviction for attempted criminal threat the jury must find that the defendant specifically intended to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety. (*Toledo, supra,* 26 Cal.4th at pp. 230–231.)

### B. The Trial Court's Instructions Were Reversible Error

In the present case, the trial court instructed the jury on the completed crime of criminal threat using the language of CALCRIM No. 1300, which lists the elements of the crime substantially as we have listed them above.[5]

---

[4] There may be circumstances in which the defendant has not actually made the type of threat prohibited by section 422, but which could constitute an attempted criminal threat. *Toledo* did not reach that question and we have no occasion to consider it here. (*Toledo, supra,* 26 Cal.4th at p. 234.)

[5] The trial court's instruction was: "The defendant is charged in Counts One and Two with having made criminal threats. To prove that the defendant is guilty of these crimes—they're both identical because they're the same charge—the People must prove that, one, the defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to William

The last two elements the trial court listed were, "the threat caused William Rogers and Rose Rogers to be in sustained fear for their own safety or for the safety of their immediate family," and "William Rogers and Rose Rogers' fear was reasonable under the circumstances."

■ The court then instructed the jury on the crime of attempted criminal threat using the general language of attempts, namely that to find defendant guilty of attempted criminal threat the jury had to find that defendant intended to make a threat of violence and that he took a direct step toward acting on his intent. The court then stated, "To decide whether the defendant intended to commit threats of violence, please refer to the instructions I just gave you as to Counts one and two." That is, the court simply referred the jury back to the elements of the substantive crime. The problem with that was that the instruction on the substantive crime included the reasonableness element only as part of the result of the completed crime, i.e., that William and Rosemary suffered fear and that the fear they experienced was reasonable. Thus, in deciding whether defendant had the intent necessary to support conviction for attempted criminal threat, the jury was not instructed to consider whether the intended threat reasonably could have caused sustained fear under the circumstances.

Counsel's arguments did not fill the gap. The prosecutor argued that the only way the jury could find defendant guilty of attempted criminal threat would be "if you found that they didn't actually—weren't actually afraid, he wanted them to be afraid, but they weren't afraid, you could find attempted . . . criminal threats. That's how that plays out." Defendant's counsel simply urged the jury to find defendant not guilty, directing the jurors to look at what the victims did, as opposed to what they said: "[T]he Rogers [*sic*], despite of what they say, they didn't act like they were in immediate threat of great bodily injury or death; they did not act that way. . . . They did nothing except to call the officer, and hang around in this supposedly zone of danger; they did nothing to protect themselves. They called the police." In short, there was nothing in the instructions or the argument of counsel that told the jury that to be guilty of attempted criminal threat defendant's intended threat had to be one that reasonably could have caused the person to suffer sustained fear.

Rogers, as alleged in Count One, and Rose Rogers in Count Two; two, that the defendant made [the] threat to William Rogers and to Rose Rogers orally; three, the defendant intended that his statement be understood as a threat to William Rogers and Rose Rogers; four, the threat was so clear, immediate, unconditional, and specific that it communicated to William Rogers and Rose Rogers a serious intention and immediate prospect that the threat would be carried out; five, the threat caused William Rogers and Rose Rogers to be in sustained fear for their own safety or for the safety of their immediate family; and, six, William Rogers and Rose Rogers' fear was reasonable under the circumstances."

Turning now to the question of prejudice, we conclude that the error is reversible. In finding defendant not guilty of the completed crime but guilty of attempt, the jury must have found that defendant made the "blow-your-head-off" statements and that he intended them to be taken as threats but that one or both of the last two elements of the completed crime was missing, namely that William and Rosemary did not suffer sustained fear or that their fear was unreasonable under the circumstances. The instruction allowed the jury to find defendant guilty of attempted criminal threats under either of these factual scenarios. And the evidence would support either scenario. The jury might not have believed William and Rosemary when they stated they actually feared for their lives. Or, the jury might have concluded, since William and Rosemary were safely inside the house with a telephone to call the police while defendant sat out front, or since defendant's threats were so outlandish, that defendant's statements could not reasonably have caused the victims to suffer sustained fear. The latter scenario is legally insufficient to support conviction of an attempted criminal threat and the former scenario is sufficient only upon finding that a reasonable person could have suffered fear in those circumstances, something the jury was not asked to decide. Since there is nothing in the record upon which to find that the verdict was actually based on a valid ground, we must reverse. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [17 Cal.Rptr.2d 365, 847 P.2d 45].)

## C. *Substantial Evidence*

Although the instructional error warrants reversal, it is necessary to reach defendant's alternative argument pertaining to the sufficiency of the evidence since the absence of sufficient evidence would preclude retrial. (Cf. *Lockhart v. Nelson* (1988) 488 U.S. 33, 34 [102 L.Ed.2d 265, 109 S.Ct. 285]; *People v. Story* (2009) 45 Cal.4th 1282, 1296–1297 [91 Cal.Rptr.3d 709, 204 P.3d 306].) When reviewing the evidence for purposes of deciding whether retrial is permissible, we consider all of the evidence presented at trial. (*Story, supra*, at p. 1297.) There was sufficient evidence here. There was evidence that defendant ranted and raved in an angry way and made threats to commit crimes that would result in death or great bodily injury to the victims. The victims had been warned that he was a dangerous man. He had piles of belongings, the contents of which were unknown to the victims. He was behaving erratically so that the victims did not know what he was going to do next. This is sufficient to support a finding that defendant intended "to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the [victims] a gravity of purpose and an immediate prospect of execution so as to reasonably cause [them] to be in sustained fear for [their] own safety or for [their] family's safety." (*Toledo, supra*, 26 Cal.4th at pp. 230–231.)

## III. Disposition

The judgment is reversed.

Rushing, P. J., and Elia, J., concurred.