Filed 3/14/13  P. v. Tavares CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061438 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN284105) |
| PEDRO ALEXANDER TAVARES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

A jury convicted Pedro Alexander Tavares of assault with a deadly weapon and by means of force likely to cause great bodily injury (Pen. Code,[1] § 245, subd. (a)(1); count 1), making a criminal threat (§ 422; count 2), and misdemeanor vandalism (§ 594, subd. (a)(b)(2)(A); count 3).  Additionally, the jury found true that Tavares personally used a deadly and dangerous weapon in the commission of the assault. (§§ 12022, subd. (b)(1);

_____

[1]    All further statutory references are to the Penal Code.

1192.7, subd. (c)(23).) The trial court suspended imposition of sentence and placed Tavares on three years of formal probation with a requirement he spend 365 days in local custody.

Tavares's sole argument on appeal is that insufficient evidence supports his conviction for making a criminal threat (count 2) because his statements to the victim, Kathleen Reiff, and his gestures did not constitute a "threat" within the meaning of section 422. We affirm the judgment.

FACTUAL BACKGROUND

On July 22, 2010, at approximately 8:00 a.m., Reiff, a meter reader for San Diego Gas and Electric, sought to park her company truck on Thunder Drive in Oceanside. Reiff was reversing into a space when Tavares's car pulled in behind her, blocking her ability to park. Reiff waved for Tavares to move, but he initially laughed and ignored her before driving around Reiff's truck and stopping next to her driver's side window. Reiff testified Tavares leaned over and in a "very threatening, very aggressive" and "brutal" voice said "something to the effect of 'I am watching you.' 'I am going to get you,' or 'I will get you, because I am watching you.' " Reiff testified Tavares had a "very angry tone of voice," and she was fearful but did not tell him anything.

Immediately afterwards, Tavares parked his car about half a block away and began walking towards Reiff's truck. When he was directly across the street from her, he formed a "v" with the index finger and ring finger of his right hand and pointed at his eyes indicating he was watching her. He next pointed his right index finger at Reiff before making a throat-slashing motion with his left hand.

Tavares returned to his apartment on Thunder Drive. His roommate observed him in the kitchen appearing to be cocking and pumping an air rifle. Tavares was close to a window facing Reiff's truck.

Two or three minutes after Tavares left Reiff, she was still sitting in her truck and heard a popping noise. Her driver's side window imploded and glass hit her in the face, chest and arms. She screamed and dialed 911.

That morning, Tavares claimed to Oceanside Police Officer Damon Smith that he had to move his car due to the street sweeping, and Reiff took the parking spot he wanted as he was making a U-turn. According to Tavares, he called her a "bitch" because he was angry, parked his car elsewhere, and returned to his apartment to shower.

Firearms examiner Anthony Paul testified that striations on a small BB found on the floorboard of Reiff's car indicated the BB had come from a pump or air gun. Paul testified that the damage to Reiff's truck was consistent with someone firing a BB from an air gun from Tavares's apartment window.

## DISCUSSION

Tavares contends that under section 422, insufficient evidence supported his conviction because his conduct did not qualify as a threat. He argues we should analyze his gestures and words separately. He contends his exact words to Reiff are unknown because Reiff merely testified that he said "*something to the effect of* 'I am watching you.' 'I am going to get you,' or 'I will get you, because I am watching you.' " (Italics added.) Alternatively, Tavares contends the statement Reiff attributed to him is ambiguous.

3

Tavares argues his "watching you" gesture followed by his throat slashing gesture did not constitute a threat because he made no accompanying verbal sounds.

" 'When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection.' " (*People v. Toledo* (2001) 26 Cal.4th 221, 233, italics omitted.) "In drafting the current version of section 422, the Legislature limited the punishment for criminal threats to this type of unprotected speech." (*People v. Jackson* (2009) 178 Cal.App.4th 590, 598.) On appeal, Tavares does not articulate a specific claim under the First Amendment of the federal Constitution warranting independent review. Therefore, the First Amendment is not implicated and we evaluate his sufficiency of the evidence challenge under the substantial evidence test. (See, e.g., *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136; *People v. Mosley* (2007) 155 Cal.App.4th 313, 322.)

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 804-805.)

The elements of a section 422 violation are: (1) defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) he

4

made the threat with the specific intent that it be taken as a threat (whether or not he actually intended to carry out the threat); (3) the threat, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat caused the person threatened reasonably to be in sustained fear for his or her own safety; and (5) the threatened person's fear was reasonable under the circumstances. (*People v. Toledo*, *supra*, 26 Cal.4th at pp. 227-228; see also § 422.)

We need not decide whether Tavares's words to Reiff, standing alone, constituted a threat, because here, the words did not stand alone. We analyze his words and gestures jointly because they occurred minutes apart and related to one continuous incident. We look to all the surrounding circumstances to determine if there was substantial evidence to prove the elements of making a criminal threat. (*People v. Wilson*, *supra*, 186 Cal.App.4th at p. 814; *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.) In determining whether ambiguous language constitutes a violation of section 422, the trier of fact may consider defendant's mannerisms, affect, and actions involved in making the threat as well as subsequent actions taken by the defendant. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013.) Thus, a facially ambiguous communication can qualify as a threat when its meaning is clarified by the surrounding circumstances. (*In re George T.* (2004) 33 Cal.4th 620, 635.)

Reiff remembered the threat sufficiently to convey its essential words and meaning to the jury. It was for the jury to evaluate the credibility of Reiff's recollections

of Tavares's statements and whether they constituted a threat.  We do not reweigh that determination on appeal.  (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13.)  During the incident, Tavares's demeanor was aggressive and he used a "very threatening" and "angry" tone of voice.  Further, his statement that he was going "to get" Reiff was made in the context of a parking dispute, along with a "watching-you" and throat-slashing gesture towards Reiff.  He subsequently fired at her with an air gun.  (See, e.g., *People v. Martinez* (1997) 53 Cal. App.4th 1212 [defendant's activities after making vague threat of "I'll get you" supported finding defendant intended those words to be taken as a threat].)  Taking into account the surrounding circumstances, the jurors could reasonably conclude Tavares communicated to Reiff that he was watching her and he would harm her.  The message communicated was not ambiguous.

Tavares relies on *People v. Franz* (2001) 88 Cal.App.4th 1426, 1439, 1442 and argues a threat must be "made verbally"; therefore, his "watching-you" and throat-slashing gestures were not threats because he did not accompany them with any utterance.  However, Tavares's contention fails in light of our analysis of his words and gestures jointly as one continuous incident, including the surrounding circumstances.

Tavares also argues that "there was no prior relationship between [him] and Reiff which could provide a context which would elevate [his] words into a threat."  Case law acknowledges special relationships may include prior disagreements, previous quarrels, or contentious, hostile or offensive remarks to one another.  (*People v. Mendoza*, *supra*, 59 Cal.App.4th at pp. 1341-1342.)  Although the parties' history may provide relevant context for a threat, a prior or special relationship is not required when other surrounding

circumstances render meaning to the threat. (See *People v. Wilson*, *supra*, 186 Cal.App.4th at pp. 796-798 [failing to require a finding of a prior relationship between the defendant and the victim].) Further, a prior or special relationship serves to establish section 422's requirement that the threat cause the victim to be in a state of sustained fear. (See e.g., *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 ["The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear."].) However, Tavares in his opening brief expressly disavowed any challenge to the effect the threat had on Reiff. Therefore, the absence of some special relationship here is not dispositive.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.