Filed 10/6/16  P. v. Rhoden CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C080226 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F481) |
| v. | |
| CONNELL LOUIS RHODEN, | |
| Defendant and Appellant. | |

A jury acquitted defendant Connell Louis Rhoden, who represented himself at trial, of criminal threats but convicted him of the lesser included offense of attempted criminal threats.  The jury acquitted defendant of assault with a deadly weapon, to wit, a screwdriver but convicted him of the lesser included offense of simple assault, a misdemeanor.  The jury also acquitted defendant of exhibiting a deadly weapon, a misdemeanor.  In bifurcated proceedings, the jury found a strike prior, a prior serious felony, and a prior prison term to be true.

The trial court struck the strike prior and sentenced defendant to state prison for an aggregate term of seven years six months.

1

Defendant appeals contending his conviction for attempted criminal threats must be reversed due to instructional error. We agree and will remand for retrial on attempted criminal threats.

FACTS

About 4:00 p.m. on January 27, 2015, the driver of a truck pulling a trailer attempted to enter the parking lot of an auto parts store but could not because defendant had stopped pushing his shopping cart with recyclables midway across the driveway. The driver honked at defendant a couple of times. Defendant moved but followed the truck into the lot, yelling and screaming at the two people inside. The truck parked in front of the store but the driver and passenger locked their doors and remained in the truck.

The store's manager, Jonathan Crossman, and an employee, Christopher Bates, were standing outside and in the doorway, respectively, and observed defendant's behavior. Crossman told defendant he was bothering customers and to leave. Defendant had been seven to eight feet away from Crossman but then approached him. Crossman claimed defendant was holding a screwdriver with a three-to-four-inch-long metal shaft. Crossman claimed defendant said, " 'What are you going to do about it' " or " 'I'll show you.' " Crossman replied that he was going to call the police. Crossman claimed defendant responded, " 'That's all you ever do is call the police.' "

Bates had first seen defendant arguing with others in a gas station parking lot across the street. After defendant crossed the street and the truck honked at defendant to move out of the driveway of the auto parts store, Bates heard Crossman tell defendant to move. Defendant then walked toward Bates and Crossman and asked what Crossman was going to do. When Crossman said he was going to call the police, defendant responded with profanities, pulled out a Phillips screwdriver with a three-to-three-and-one-half-inch-long metal part and held it as if it were a knife, and said, " 'Well, that's all you ever do.' " Bates claimed defendant also stated, " 'See what happens' " and " 'Call

2

the f------ cops.' " Bates described defendant as very threatening and felt scared that if Crossman fell while retreating from defendant, who was approaching "fairly fast," that Crossman could get hurt. Bates thought defendant was drunk.

Crossman testified he was scared since he did not know what defendant intended to do but believed defendant planned to stab him. When defendant got within three feet, Crossman entered the store and closed and locked the door. Crossman told Bates to call the police. According to Bates, Crossman appeared to be afraid. Through the door, Crossman told defendant that the police had been summoned. Defendant left the area. Crossman was leaving work in about 30 minutes and was concerned that defendant might still be in the area since defendant had headed in the direction of Crossman's car.

Crossman and Bates admitted on cross-examination that they had had no previous dealings with defendant. Crossman claimed the people in the truck were frequent customers but he did not know their names. After their encounter with defendant, these customers entered the store, bought products, and then "left in a hurry." Crossman claimed he had not seen these customers since, explaining he had been promoted and did not work on the retail floor.

Three police officers as well as a police dog arrived about 10 minutes after the call. An officer found defendant pushing a shopping cart a quarter of a mile from the store. Defendant did not run from the officer and followed instructions. A search of defendant's person did not reveal a screwdriver. When interviewed, defendant claimed he got into an argument with "a couple of guys" who were "mad dogging" him (staring at him as if they wanted to fight). Defendant confronted them and asked if they had a problem. He exchanged words and eventually a store employee intervened. Defendant denied having a screwdriver or that he had threatened anyone.

Despite a 30- to 45-minute search which included gutters, the store's rooftop, and defendant's path using the dog, the screwdriver was never found. There were no photos or video of the incident; the auto parts store did not have any surveillance cameras.

3

Defendant testified that he had been recycling cans and pushing his shopping cart when he noticed Crossman and Bates smoking cigarettes and staring at him. Defendant approached them and asked what their problem was and why they were staring at him. Defendant did not recall their response but defendant told them that he did not have a problem with them. Crossman and Bates then went into the store. Defendant denied having a screwdriver and denied threatening or trying to attack anyone. He did not know "where this life-and-death struggle," similar words Crossman had used in testifying, was originating. When told to leave the property, he did.

Defendant denied telling the officer that he had had an argument with Crossman and Bates. Defendant claimed that he had been arguing with two men, who lived at the mission with defendant, across the street from the auto parts store. When defendant noticed Crossman and Bates staring at him, he crossed the street and confronted them about it. Defendant claimed there was nothing to argue about.

Defendant told the jury that he knew the law, having been acquitted of a prior charge of criminal threats, and was "very careful of what [he] say[s] to individuals, very careful." Defendant stated he was 55 years of age and denied committing any of the charged crimes. He admitted having previously been convicted in 1994 of assault with a deadly weapon, to wit, a "metal rod or piece of metal," but he had considered the incident mutual combat despite his conviction. He also admitted priors for stealing or driving a stolen vehicle "20 years ago" and felony failure to appear in 2011.

## DISCUSSION

Defendant was charged with making criminal threats to Crossman. The trial court instructed the jury on criminal threats.[1]

---

[1]    The court instructed the jury in the language of CALCRIM No. 1300 as follows:

"The defendant is charged in Count 1 with having made a criminal threat in violation of Section 422 of the Penal Code. To prove that the defendant is guilty of this

4

Immediately thereafter, the trial court instructed the jury on the lesser included offense of attempted criminal threats.[2]

---

crime, the People must prove that, one, the defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to John Crossman. Two, the defendant made the threat orally. Three, the defendant intended that his statement be understood as a threat. Four, the threat was so clear, immediate, and unconditional and specific that it communicated to John Crossman a serious intention that the immediate prospect that the threat would be carried out. Five, the threat actually caused John Crossman to be in sustained fear for his safety and, six, John Crossman's fear was reasonable under the circumstances.

"Someone commits an act unlawfully when he does it willingly or on purpose. In deciding whether a threat was sufficiently clear, immediate, unconditional, and specific, consider the words themselves as well as the surrounding circumstances. Someone who intends that a statement be understood as a threat does not have to actually intend to carry out the threatened act. Great bodily injury means significant or substantial physical injury.

"It is injury that is greater than minor, moderate harm. Sustained fear means fear for a period of time that is more than momentary, fleeting, and transitory. An immediate ability to carry out the threat is not required."

[2] The court instructed the jury on attempted criminal threats in the language of CALCRIM No. 460 as follows:

"A lesser included offense to criminal threats as charged in Count 1 is attempted criminal threats.

"To prove the defendant is guilty of this crime, the People must prove that, one, the defendant took a direct but ineffectual step toward committing criminal threats and, two, the defendant intended to commit criminal threats. A direct step requires more than merely planning or preparing to commit criminal threats or obtaining or arranging for someone needed to commit criminal threats. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action.

"A direct step indicates a definite and unambiguous intent to commit criminal threats. It is direct movement towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan did not interrupt the attempt. A person who attempts to commit criminal threats is guilty of attempted criminal threats

5

The Bench Notes for CALCRIM No. 460 state that when the attempted crime is criminal threats, the court must instruct on a third element to comply with *People v. Chandler* (2014) 60 Cal.4th 508, 525, that is, "[t]he intended criminal threat was sufficient under the circumstances to cause a reasonable person to be in sustained fear."[3]

Defendant contends and the People concede that the trial court erred in failing to instruct the jury on the required third element for attempted criminal threats. We agree. A trial court has a duty to instruct *sua sponte* on the general principles of law applicable to the case, including lesser included offenses. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149, 154; *People v. Taylor* (2010) 48 Cal.4th 574, 623.) At the time of defendant's trial, CALCRIM No. 460 included the third element for attempted criminal threats.

Defendant contends the error was prejudicial while the People respond any error was harmless beyond a reasonable doubt. We conclude that the trial court's error was prejudicial and will reverse.

"Under state law, instructional error that withdraws an element of a crime from the jury's consideration is harmless if there is 'no reasonable probability that the outcome of defendant's trial would have been different had the trial court properly instructed the jury.' [Citations.] Under federal law, the 'Fifth Amendment right to due process and

_____

even if after taking a direct step towards committing the crime he or she abandoned further efforts to complete the crime, or if his or her attempt failed or was interrupted by someone or something beyond his or her control.

"On the other hand, if a person freely and voluntarily abandons his or her plans before taking a direct step toward committing criminal threats, then that person is not guilty of attempted criminal threats. To decide whether the defendant intended to commit criminal threats, please refer to the instructions I will give you on that crime."

[3] *Chandler* stated that the offense of attempted criminal threat requires proof that "defendant had a subjective intent to threaten *and* that the intended threat under the circumstances was sufficient to cause a reasonable person to be in sustained fear." (*People v. Chandler*, *supra*, 60 Cal.4th at p. 525.)

Sixth Amendment right to jury trial . . . require the prosecution to prove to a jury beyond a reasonable doubt every element of a crime.' [Citations.] Accordingly, a trial court's failure to instruct on an element of a crime is federal constitutional error that requires reversal of the conviction unless it can be shown beyond a reasonable doubt that the error did not contribute to the jury's verdict. [Citations.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1208-1209; *Neder v. United States* (1999) 527 U.S. 1, 8-16 [144 L.Ed.2d 35]; *People v. Chandler*, *supra*, 60 Cal.4th at p. 525.)

Attempted criminal threats requires "that the defendant have an intent to threaten" and "that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*People v. Chandler*, *supra*, 60 Cal.4th at p. 525.) If the evidence shows beyond a reasonable doubt that defendant's threat was sufficient to cause a reasonable person to be in sustained fear, the error is harmless. We cannot say that here.

Crossman testified that defendant confronted him with a screwdriver and Crossman was fearful because he did not know what defendant intended to do but believed defendant planned to stab him. Crossman retreated to the inside of the store and closed and locked the door. After Bates called the police, Crossman told defendant through the locked door that the police had been called.

Defendant testified and admitted approaching and confronting Crossman and Bates about staring at him but denied having a screwdriver, attempting to attack anyone, or threatening them. When told to leave, he did.

The prosecutor argued that the evidence was sufficient for criminal threats. The prosecutor then told the jury that even if it believed that Crossman was not in sustained fear or that his fear was not reasonable, it could convict defendant of attempted criminal threats because only the first four elements of CALCRIM No. 1300 were required, and not the last two elements (sustained fear/objectively reasonable).

7

The prosecutor argued the facts for the first four elements and then discussed the last two elements of CALCRIM No. 1300: "John Crossman's fear was reasonable under the circumstances. Tall man yelling at you, fists clenched, one first with a screwdriver, yelling 'I'm going to get you. See what happens,' coming at you to within two or three feet while you're backpedaling, locking the door. Reasonable fear. There's no two ways about it. There's no question, no ambiguity about what the defendant's intentions were. Mr. Crossman even told you the defendant disappeared around the corner immediately after this encounter. And until the cops showed up, Mr. Crossman was still afraid of having to go outside because he didn't know where the defendant had gone to. He could have been waiting around the corner where Mr. Crossman's car was parked waiting to ambush him at 4:30 when he was to go home at the end of his shift. Sustained fear, reasonable fear based on the defendant's conduct and the threat he made. That is Count 1.

"There's a further definition. Sustained fear means fear for a period of time that is more than momentary, fleeting, or transitory. And again, Mr. Crossman told you that he was in fact fearful for a while, not just a fleeting moment. *Now, the Court is going to instruct you on attempt. It's called lesser included. So you have the completed criminal threats. You could find, however, that Mr. Crossman was not in reasonable sustained fear so that the last two elements, one or both of those last two elements, were not proven. Then you could find that the defendant did everything he possibly could, but because all six elements weren't completed, it's only attempt, so that's why the Court is going to read you attempt.*

"But as I've stated here, the entire six elements have been proven by the testimony and the defendant's testimony doesn't undermine any of the six elements." (Italics added.)

*People v. Jackson* (2009) 178 Cal.App.4th 590 (*Jackson*) is instructive. In *Jackson*, the defendant, a Vietnam war veteran, had been asked by the landlords (the

8

victims) to leave the house where he had been staying with the renter. After collecting most of his belongings, the defendant went outside of the house. He became anxious and irritated, saying something about getting a rifle and " 'blowing [the victims'] heads off' and 'chopping [the victims] heads off.' " (*Id.* at pp. 593-594.) The defendant went back into the house and threatened, " 'I'm going to get an AK-47 and blow all your heads off.' " (*Id.* at p. 594.) The victims called the police and remained inside the house. (*Ibid.*) The defendant went back outside and sat down, " 'ranting and raving.' " (*Id.* at pp. 594-595.) One victim feared for everyone's safety including her own life, not knowing what the defendant would do. (*Id.* at p. 594.) The renter and her father were present and testified at trial, denying that they heard the defendant make any threats although he had been " 'belligerent and rude.' " (*Id.* at p. 595.) The renter, however, had given a statement at the scene which was consistent with the statements of the victims. (*Ibid.*)

The jury instructions in *Jackson* were substantially the same as the instructions in this case. (*Jackson*, *supra*, 178 Cal.App.4th at pp. 598-599.) The defendant in *Jackson* was acquitted of two counts of making criminal threats but convicted of two counts of attempted criminal threats. (*Id.* at p. 593.) On appeal, the defendant claimed the trial court erred in failing to instruct *sua sponte* that "in order to find him guilty of attempted criminal threat, it must find that 'it would have been reasonable for a person to have suffered sustained fear as a result of the threat under the circumstances of this case.' " (*Id.* at p. 595.) *Jackson* agreed, finding the error prejudicial. (*Id.* at pp. 596-600.)

*Jackson* explained: "In finding defendant not guilty of the completed crime but guilty of attempt, the jury must have found that defendant made the 'blow-your-head-off' statements and that he intended them to be taken as threats but that one or both of the last two elements of the completed crime was missing, namely that [the victims] did not suffer sustained fear or that their fear was unreasonable under the circumstances. The instruction allowed the jury to find defendant guilty of attempted criminal threats under

9

either of these factual scenarios. And the evidence would support either scenario. The jury might not have believed [the victims] when they stated they actually feared for their lives. Or, the jury might have concluded, since [the victims] were safely inside the house with a telephone to call the police while defendant sat out front, or since defendant's threats were so outlandish, that defendant's statements could not reasonably have caused the victims to suffer sustained fear. The latter scenario is legally insufficient to support conviction of an attempted criminal threat and the former scenario is sufficient only upon finding that a reasonable person could have suffered fear in those circumstances, something the jury was not asked to decide." (*Id*. at p. 600.)

In *Jackson*, the defendant was not holding an AK-47 when he threatened to shoot the victims. There was no evidence that he had an AK-47. The victims were inside the house and had called the police. The defendant was outside.

Here, the jury rejected both victims' testimony that defendant held a screwdriver when he threatened them, acquitting defendant of both exhibiting a weapon and assault with a deadly weapon (convicting of simple assault). When Crossman told defendant to leave the premises, defendant was in close proximity to and approached Crossman when he (defendant) stated, " 'What are you going to do about it' " or " 'I'll show you.' " When Crossman said he would call the police, defendant replied that that's all he ever did. Bates also claimed defendant stated, " 'See what happens' " and " 'Call the f------ cops.' " Crossman immediately went inside the store and closed and locked the door, telling defendant the police had been summoned. As in *Jackson*, "[t]he jury might not have believed [the victim] when [he] stated [he] actually feared for [his life]. Or, the jury might have concluded, since [the victim was] safely inside the [store] with a telephone to call the police while defendant [stood] out front, or since defendant's threats were so outlandish, that defendant's statements could not reasonably have caused the victim[] to suffer sustained fear. The latter scenario is legally insufficient to support conviction of an attempted criminal threat and the former scenario is sufficient only upon finding that a

10

reasonable person could have suffered fear in those circumstances, something the jury was not asked to decide." (*Jackson*, *supra*, 178 Cal.App.4th at p. 600.)

The instructional error was not harmless beyond a reasonable doubt. The trial court's failure to so instruct on the third element, combined with the prosecutor's erroneous argument to the jury, renders the error prejudicial under the facts here.

Retrial is appropriate. There is sufficient evidence, if believed by the jury, that defendant's threat was sufficient under the circumstances to cause a reasonable person to be in sustained fear for his own safety.

## DISPOSITION

Defendant's conviction for attempted criminal threats is reversed. His conviction for simple assault is affirmed. The matter is remanded for retrial on attempted criminal threats.

Robie, J.

We concur:

Nicholson, Acting P. J.

Hoch, J.

11