Filed 6/11/21  P. v. Humphrey CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSEPH LEONARD HUMPHREY,<br><br>    Defendant and Appellant. | F079393<br><br>(Super. Ct. No. PCF342340)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Michael B. Sheltzer, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Joseph Leonard Humphrey was convicted by jury trial of attempted criminal threats. On appeal, he contends (1) the trial court erred in admitting his statements to police despite inadequate *Miranda*[1] warnings, and in the event of forfeiture of the *Miranda* issue, he received ineffective assistance of counsel; (2) the trial court erred in failing to instruct the jury on every element of attempted criminal threats; (3) the abstract of judgment must be corrected to reflect the correct sentence; and (4) in light of Senate Bill No. 136 (Stats. 2019, ch. 590, § 1, pp. 1–4; Senate Bill No. 136), defendant's two prior prison term enhancements should be stricken. We conclude the instructional error was prejudicial. Accordingly, we reverse and remand.

## PROCEDURAL SUMMARY

On April 2, 2019, the Tulare County District Attorney filed an amended complaint charging defendant with two counts of criminal threats (Pen. Code, § 422; counts 1 & 2)[2] and one count of dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 3.) The amended complaint further alleged three prior prison term enhancements (§ 667.5, subd. (b)) and three out-on-bail enhancements (§ 12022.1). Defendant pled not guilty and denied all special allegations.

On April 8, 2019, the jury found defendant not guilty of criminal threats in count 1, but guilty of the lesser included offense of attempted criminal threats. The jury also found him not guilty as to counts 2 and 3. On May 6, 2019, in a bifurcated proceeding, the trial court found true two prior prison term allegations and one out-on-bail allegation.

On May 10, 2019, defendant was sentenced to four months in prison (one-third the midterm sentence for the attempted criminal threats conviction), to run concurrently with the terms imposed in two other cases.

---

[1]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[2]     All statutory references are to the Penal Code unless otherwise noted.

2.

On June 4, 2019, defendant filed a timely notice of appeal.

## FACTUAL SUMMARY

C.H. is defendant's former father-in-law and the grandfather of his two children. Between 2016 and 2018, C.H. and defendant's mother shared custody of defendant's two children. On May 12, 2016, C.H. saw a Facebook post from defendant's account stating:

> "Today I promise this. Mark my fucking words. If this piece of shit douche bag ever lays a hand on my kids again, trust and believe the mother fucker will never walk again. This is the biggest piece of shit to ever walk the earth. You wanna slap somebody, come slap me fuck face, not a 13 year old girl. I'm coming after your ass one way or another—it's time you are put in your bitch ass place, six feet under, mother fucker. You know how to reach me and where to reach me, jack off. There's a special place in hell for you, and I will be there to make sure that your ass is kicked every day. Enjoy your free ride. It's almost over, tough guy. Grow a pair bitch."

Two photos of C.H. were attached to the post. C.H. felt violated and upset by the posted material.

### *Facts Underlying Count 1*

On August 24, 2016, C.H. received a text message from an unknown sender containing a screenshot of a second Facebook post. The Facebook post contained a picture of defendant flipping the screen off and a message that read:

> "Hey [C.H.], I am still here just like the herpes you can't kick. Fuck you, douche bag. Your day is coming, Mr. Grow a Pair. I'll take my last breath destroying you, you miserable fat fucking slob cocksucker. Smoke a cigar and envision your last breath on this Earth, you fuck face, no good cunt."

C.H. texted back, "Who is this?" He did not receive a response. C.H. felt upset, mad, and concerned. He began carrying his pistol to bed for protection. He was concerned for his safety and his grandchildren's safety.

After C.H. received the anonymous text, he exchanged numerous texts with a friend concerning defendant's Facebook posts. In one text, C.H. sent a screenshot of

3.

defendant's second Facebook post and said, "I guess he is not liking me much." C.H. followed with a smiley face. His friend responded, "He couldn't have played better into your hands if he tried." In another text, C.H. sent a screenshot of the first Facebook post and said, "Not sure if I ever sent you this one." Another smiley face followed. His friend responded, "Nope. Doesn't this mean he won't be supporting you for council? Print that off and take it to the PC. You probably have enough to lock him up until the trial. That would be good." C.H. replied, "Now that would be a bit of fun." In another text, C.H. stated, "Sent the chief the photos. I would have to state that I fear for my safety. Damn, that's a tough one for me."

On August 25, 2016, C.H. reported defendant's threats to the Porterville Police Department. Afterwards, C.H. texted his friend a picture of the emergency protective order that he procured against defendant and said, "It kills me to read the part that I fear for my safety." C.H. testified that he said that because he was not afraid of being confronted face-to-face, but he had a "fear of the unknown." He stated, "I have no fear to that confrontation but I do have the fear of being subject to not knowing who it could be, not knowing if it was going to be from a long distance, not knowing if they would invade my house. So it's a different type of fear. It's a fear of the unknown."

On October 16, 2016, after defendant was arrested, Detective Michael Gray of the Porterville Police Department interviewed defendant concerning the Facebook posts. Defendant admitted making both posts because he was mad that C.H. hit his daughter and caused him to get fired from his job. Defendant had blocked C.H. on Facebook, but he believed C.H.'s friends would tell him about the posts because they "stalked" his Facebook page.

***Facts Underlying Counts 2 and 3***

In June 2018, defendant was intoxicated and told his daughter that he would kill C.H. if defendant went to jail because of him. Afterwards, defendant told her not to say anything or she would get in trouble. Defendant's mother and son were also present. His

4.

mother took his statements as "big talk." His son did not hear the statement about killing C.H., but heard him say that if C.H. ever hurt his children, he would regret it.

On August 15, 2018, C.H. and defendant's daughter went to the Porterville Police Department to report defendant's statements. In February 2019, defendant texted his daughter, asking her not to talk about the statements he previously made about C.H.

## DISCUSSION

### I. Instructional Error

Defendant contends that the trial court erred in failing to instruct on an element of attempted criminal threats, specifically the element that the intended threat must have been sufficient under the circumstances to cause a reasonable person to be in sustained fear. We agree that the court erred and conclude the error was prejudicial.

#### A. Background

Defendant was charged with two counts of criminal threats. The jury was instructed on the completed crime of criminal threats pursuant to CALCRIM No. 1300 as follows:

> "The defendant is charged in Count 1 and 2 with having made criminal threats, in violation of Penal Code Section 422.

> "To prove the defendant [is] guilty of this crime, the People must prove that: Number 1, the defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to C.H.; 2, the defendant made the threat orally; 3, the defendant intended that his statement be understood as a threat and intended that it be communicated to C.H. … ; 4, the threat was so clear, immediate, unconditional and specific that it communicated to C.H. a serious intention and immediate prospect that the threat would be carried out; 5, the threat actually caused C.H. to be in sustained fear for his own safety or for the safety of his immediate family; and 6, his fear was reasonable under the circumstances."

The jury was further instructed on the lesser included offense of attempted criminal threats pursuant to CALCRIM No. 460 as follows:

5.

"To prove that the defendant is guilty of attempted criminal threats, that is a violation of Penal Code Section 422, the People must prove that: Number 1, the defendant took a direct but ineffective step towards committing a violation of Penal Code Section 422; and 2, that the defendant intended to commit Penal Code Section 422."

The jury found defendant guilty of attempted criminal threats in count 1.

**B.      Analysis**

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824.)  "[A] trial court's failure to instruct on an element of a crime is federal constitutional error that requires reversal of the conviction unless it can be shown beyond a reasonable doubt that the error did not contribute to the jury's verdict." (*People v. Cole* (2004) 33 Cal.4th 1158, 1208.) On appeal, "[w]e independently determine whether instructions correctly state the law." (*People v. McDonald* (2015) 238 Cal.App.4th 16, 26.)

**1.      Criminal Threats**

Section 422, subdivision (a) provides that "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished .…"

Our Supreme Court has explained section 422's requirements in terms of five elements:  "The prosecution must prove '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement … is to

6.

be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat … was "on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.'" (*In re George T.* (2004) 33 Cal.4th 620, 630.)

Incorporating these elements into a jury instruction, CALCRIM No. 1300 adds an additional element (no. 2) to clarify that the threat may take various forms:

"1.  The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to [the victim];

"2.  The defendant made the threat (orally/in writing/by electronic device);

"3.  The defendant intended that (his/her) statement be understood as a threat [and intended that it be communicated to (the victim)];

"4.  The threat was so clear, immediate, unconditional, and specific that it communicated to [the victim] a serious intention and the immediate prospect that the threat would be carried out;

"5.  The threat actually caused [the victim] to be in sustained fear for (his/her) own safety [or for the safety of (his/her) immediate family];

"[AND]

"6.  [The victim's] fear was reasonable under the circumstances."

Although the parties do not raise this issue, we observe that the trial court's instruction (both oral and written) on criminal threats was erroneous as it applied to count 1, because it required that defendant's threat was *oral* (" 2, the defendant made this threat orally"), which is not a requirement of section 422.  (See § 422 ["the statement, made verbally, in writing, or by means of an electronic communication device"].)

7.

Furthermore, because the facts underlying count 1 involved a written, electronically delivered threat, it is possible the jurors acquitted defendant of criminal threats on count 1 only because his threat was not an oral one.

### 2. Attempted Criminal Threats

Attempted criminal threats is a lesser included offense of criminal threats. (*People v. Chandler* (2014) 60 Cal.4th 508, 513 (*Chandler*).) CALCRIM No. 460 is the standard attempt instruction, used for various attempt crimes, and provides in relevant part:

> "[The defendant is charged [in Count ___] with attempted _____ *<insert target offense>*.]
>
> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> "1. The defendant took a direct but ineffective step toward committing ____*<insert target offense>*;
>
> "AND
>
> "2. The defendant intended to commit ____*<insert target offense>*."

The bench notes to this instruction further provide that if the jury is instructed on attempted criminal threats, the trial court must also give the following third element as required by *Chandler*: "The intended criminal threat was sufficient under the circumstances to cause a reasonable person to be in sustained fear." (Bench Notes to CALCRIM No. 460; see *Chandler*, *supra*, 60 Cal.4th at p. 525.)

Defendant argues that the trial court erred because it failed to instruct the jury on this third element. The People concede that the trial court erred, but argue that the error was harmless because no reasonable juror could have failed to find defendant's threat sufficient to cause a reasonable person to be in sustained fear.

*People v. Jackson* (2009) 178 Cal.App.4th 590 (*Jackson*) is instructive in this case. In *Jackson*, the defendant stood outside the victims' home and threatened to "chop[]" or "'blow'" their heads off with an AK-47 while the victims were inside the house calling

8.

the police.  (*Id.* at p. 594.)  The defendant was charged with two counts of criminal threats, but was acquitted of the crimes as charged and convicted of two counts of attempted criminal threats.  (*Id.* at p. 595.)

The jury instructions in *Jackson* were substantially the same as the instructions at issue here.  As in the present case, the jury in *Jackson* was instructed on attempted criminal threats, but was not instructed on the third element.  (*Jackson*, *supra*, 178 Cal.App.4th at p. 599.)  On appeal, the defendant argued that the trial court erred in failing to instruct the jury that in order to find him guilty of attempted criminal threats, the prosecution had to prove that the threats were sufficient to cause a reasonable person to be in sustained fear.  (*Id.* at p. 595.)  The Court of Appeal found the trial court committed prejudicial error and reversed.  (*Id.* at pp. 599–600.)

In finding the error prejudicial, the court explained that "the jury must have found that [the] defendant made the 'blow-your-head-off' statements and that he intended them to be taken as threats but that one or both of the last two elements of the completed crime was missing, [because the victims] did not suffer sustained fear or that their fear was unreasonable under the circumstances."  (*Jackson*, *supra*, 178 Cal.App.4th at p. 600.)  The court noted that the evidence could support either scenario.  (*Ibid.*)  "The jury might not have believed [the victims] when they stated they actually feared for their lives.  Or, the jury might have concluded, since [the victims] were safely inside the house with a telephone to call the police while [the] defendant sat out front, or since the defendant's threats were so outlandish, that [the] defendant's statements could not reasonably have caused the victims to suffer sustained fear."  (*Ibid*.)

Similarly, in this case, we conclude the trial court's error in failing to ask the jury to consider whether the "threat [was] sufficient under the circumstances to cause a reasonable person to be in sustained fear" (*Chandler*, *supra*, 60 Cal.4th at p. 525) was prejudicial because, as in *Jackson*, the evidence could support two distinct scenarios.  The jury could have either believed C.H. when he testified that he began carrying a pistol to

9.

bed because he feared for his and his grandchildren's safety, or they could have believed that defendant's threat could not reasonably have caused C.H. to suffer sustained fear. Defendant did not threaten C.H. while face-to-face. The threat was made over Facebook, and C.H. was blocked from defendant's Facebook page. C.H. received the Facebook post through an anonymous text. Moreover, although C.H. testified that he had "a fear of the unknown," he also testified that he was not afraid to confront defendant face-to-face. Accordingly, the jury could have concluded that "defendant's statements could not reasonably have caused [C.H.] to suffer sustained fear," either because he could have safely called the police, or because the jury might have found defendant's Facebook statements so outlandish that a reasonable person would not have suffered sustained fear. (*Jackson*, *supra*, 178 Cal.App.4th at p. 600.) Thus, the jury may have reached a different conclusion if they had been asked to consider whether defendant's threats were "sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Chandler*, *supra*, at p. 525.)

In sum, we conclude the trial court's instructional error on attempted threats was prejudicial to defendant.

## II. Remaining Contentions

The parties agree that the abstract of judgment incorrectly reflects defendant's sentence as four *years* rather than four months, and that both prior prison term enhancements should be stricken pursuant to Senate Bill No. 136. These contentions, in addition to the *Miranda* issue, however, are rendered moot by our reversal on the instructional error.

## III. Conclusion

Although we reverse the sole conviction in this case and remand for possible retrial, because the conviction in this case was sentenced as a subordinate term to the terms in Tulare Superior Court cases Nos. PCF306745 and PCF325555, the trial court shall, in any event, amend the abstract of judgment.

10.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.  The trial court is directed to amend the abstract of judgment and forward copies to the appropriate entities.


                                                      MEEHAN, J.

WE CONCUR:


LEVY, Acting P.J.


POOCHIGIAN, J.

11.