Filed 12/28/21  P. v. Eddowes CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CAVIN LEE EDDOWES,<br><br>    Defendant and Appellant. | F079674<br><br>(Super. Ct. No. BF170034A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Cavin Lee Eddowes sexually assaulted a woman and then obstructed and threatened to kill the deputy sheriff transporting him after his arrest. A jury convicted defendant of assault with intent to commit rape by force, false imprisonment with violence, attempted criminal threat, and misdemeanor obstruction or resisting a peace officer. The trial court sentenced defendant to a total term of six years in prison.

Defendant contends on appeal that (1) we should reverse his conviction for attempted criminal threat because the trial court failed to instruct the jury that the intended threat must have been sufficient to cause sustained fear in a reasonable person, (2) we should strike a $30 criminal conviction assessment the trial court did not orally pronounce at sentencing from the abstract of judgment, and (3) we should order the trial court to amend the sentencing minute order and abstract of judgment to reflect the components of the $930 penalty assessment.

The People concede the trial court erred in failing to instruct the jury on an element of the attempted criminal threat offense but argue that any error was harmless given the evidence in this case. The People further argue that because the $30 criminal conviction assessment was mandatory, we may order that the minutes and abstract of judgment be modified. Finally, the People agree that we should order the trial court to amend the minute order and abstract of judgment to describe the components of the $930 penalty assessment.

We remand with directions to the trial court to set forth the components of the penalty assessment in the minutes and the abstract of judgment. We affirm in all other respects.

**PROCEDURAL BACKGROUND**

Defendant was originally charged by complaint on October 19, 2017. Prior to defendant's preliminary hearing, on November 28, 2017, defense counsel raised a doubt as to defendant's competency pursuant to Penal Code section 1368.[1] The trial court

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2.

found defendant incompetent to stand trial and committed him to the State Department of State Hospitals on January 23, 2018. Defendant was found competent to stand trial on January 9, 2019. Defendant waived his right to a preliminary hearing and the court held him to answer on January 22, 2019.

On January 23, 2019, the Kern County District Attorney filed an information charging defendant with assault to commit sexual intercourse by force (§§ 220, 261, subd. (a)(2); count 1), false imprisonment by violence, menace, fraud, or deceit (§§ 236, 237, subd. (a); count 2), attempted criminal threat (§§ 664, 422; count 3), and misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 4). Defendant pled not guilty to all charges in the information.

After a seven-day trial, the jury convicted defendant of all charges on June 24, 2019.

On July 23, 2019, the court denied probation and sentenced defendant to prison for six years as to count 1, three years stayed (§ 654) as to count 2, 18 months as to count 3 (concurrent to count 1), and one year as to count 4 (concurrent to count 3). In addition, the trial court ordered that the defendant pay a $300 fine (§ 290.3) and a $930 penalty assessment (as calculated in the probation report) as to count 1; a $300 restitution fine and a $300 parole revocation restitution fine (§§ 1202.4, 1202.45) as to count 3; victim restitution (§ 1202.4, subd. (f)) as to counts 1 and 3;[2] and $30 criminal conviction assessments (Gov. Code, § 70373) and $40 court operations assessments (§ 1465.8) as to each count.

Defendant timely appealed on July 25, 2019.

### FACTS

Jane Doe arranged to meet Michael Phillips in Standard Park (the park) in Bakersfield, California on October 17, 2017, at approximately 11:00 a.m. Doe had come

---

[2]     The court ordered probation to determine the amount of restitution and that it be paid to the confidential victim and to the Restitution Fund in the State Treasury.

to Bakersfield to visit her mother for a few days. Although she had never met Phillips before, Phillips had previously dated the sister of Doe's former boyfriend. When Phillips arrived at the park, defendant was accompanying him. Doe had not met defendant before. They sat near the bathrooms and, after approximately 30 minutes, Phillips left to get something to eat. At one point, Doe tried to contact Phillips to see how long he would be gone.

Defendant sat approximately three feet away from her and they engaged in small talk. During the conversation, defendant complimented her legs and repeatedly asked her to go into the bathroom. Doe thought this was strange and refused to go. Defendant asked her to accompany him into the bathroom approximately seven more times, explaining that he had something he wanted to show her. He laid on the ground and asked Doe to cuddle with him. Doe declined. Defendant commented that the park was empty and then lunged forward while grabbing Doe's wrists and sitting on her. Defendant held Doe's wrists with both hands, said he would be getting "some pussy," and told her to sit there. Defendant thrusted his crotch at her and, holding her wrist with one hand, reached for her shorts.

Doe struggled and screamed and a man in a white truck yelled at defendant to get off her. Defendant then got up and told Doe that she would not "get away with this" before running off. The man in the white truck and a woman gave her some water and called the police. The police arrived five minutes later. An officer drove Doe to the location where defendant had been detained. Doe identified defendant as her assailant based upon his missing front teeth that day. She also positively identified defendant as her assailant while testifying during defendant's trial. Doe testified that she did not want to have sex with defendant and believed defendant intended to rape her.

Richard Timmermans testified that he was eating lunch in his truck at the park on October 17, 2017, when he heard screaming. Timmermans saw defendant using one hand to hold Doe's hands and the other hand to pull her pants down. Timmermans yelled

at defendant and called 911. Another woman was walking on the sidewalk and went to help Doe. Both women walked to Timmerman's truck while he finished speaking with the 911 dispatcher.

When defendant left the scene, Timmermans followed him with his truck. Timmermans contacted 911 once from the park where he saw Doe and again from an alley where he had followed defendant. Timmermans identified defendant to the police as the assailant.

Deputy Amanda Plugge responded to the 911 call and contacted defendant in the alley located one block from the park. Timmermans flagged her down and identified defendant as Doe's assailant. While Plugge detained defendant, Deputy Raymundo Martinez arrived with Doe to identify defendant. Plugge placed defendant into her patrol car to transport him to jail. While waiting to turn out of the alley, defendant slammed his forehead into the barrier separating the front and back seats and split open his forehead. He then flipped himself and started kicking the back door.

Deputy Martinez testified that he responded to the park and met with Doe who he then escorted to identify defendant. Martinez was still in the alley when defendant headbutted the seat barrier and assisted in restraining defendant until other officers arrived. After transporting Doe home, Martinez returned to the alley where defendant was being transferred to an ambulance. Martinez followed the ambulance to the hospital. After defendant had received treatment, Martinez contacted defendant to transport him to the jail. Martinez told defendant that they were leaving the hospital and tugged on defendant's arm. Defendant started screaming that he would not leave and stated, "I'm not going to fucking jail. You are going to have to fight me." Defendant started kicking him and Martinez asked security staff to restrain defendant while he obtained a restraint from his patrol vehicle. When he returned, Martinez told defendant to stop resisting, but defendant refused to obey. Defendant kicked and struggled for approximately 10 minutes before Martinez was able to hobble defendant's legs to the hospital gurney. Still not able

to control defendant, Martinez used the gurney to transport defendant to the patrol car. Defendant was eventually restrained by the efforts of Martinez, another deputy, and two hospital security guards.

Defendant continued to resist Martinez even after being placed in the patrol car. Defendant kicked the doors of the patrol vehicle and headbutted the glass partition several times. Martinez retrieved an additional restraint and tied defendant's hands to the floor of the vehicle to prevent him from hitting his head. While traveling to the jail, defendant threatened to kill Martinez and said, "I will fucking kill you when I get out of jail, motherfucker. You will see, you fucking pig. I will get out soon. I will fucking kill you. You better watch your back, motherfucker."

Martinez testified that he believed defendant's threats to kill him and was in actual fear as a result. Martinez further believed that defendant intended to carry out his threats whether Martinez was on patrol or off work because defendant had behaved violently during the initial contact, transportation to the hospital, and at the hospital. Because defendant "had no care for himself," Martinez "felt that [defendant] would do the same to [Martinez] or worse." Martinez testified that although he had been threatened previously, defendant's threats caused him to be in sustained fear because he knew that defendant might be released from custody, their community was small, and Martinez previously ran into suspects he had arrested in their community. Martinez stated that defendant "really stuck out" in his mind and he was concerned that he might encounter defendant one day on the street. Despite defendant's threats, Martinez did not request a change in his patrol area or a change in his shift. Martinez testified that while he had items that he could use to defend himself, those items were not always available when he was off duty.

Defendant testified he and Doe had been dating for several months, initially testifying they met in December 2016, but then later testifying they met in October 2017. At first, defendant testified he met Doe at his aunt's house and they got together four or five times thereafter. Defendant later testified he met Doe once at his aunt's house for

coffee and two additional times at the park. Defendant later testified that he had met Doe only once before the day of the incident in the park, and Doe said she wanted to be his girlfriend. Defendant testified that he was in the park with Doe when she began "wigging out, like trippin." She demanded money from defendant and fought and scratched him. Defendant grabbed her wrists and told her to stop trying to hit him. He tried to walk away from Doe. She yelled at him and told him to let go of her hands or she would call the cops. He then walked away. Defendant testified that after his arrest, he told Deputy Plugge that he did not know Doe but testified that he made that statement to the officer because he was nervous and did not want to go to jail.

## DISCUSSION

**I.** ***The trial court's failure to instruct the jury as to an element of attempted criminal threat was harmless beyond a reasonable doubt.***

Defendant contends he was denied his rights to due process and a fair trial because the trial court failed to instruct the jury that it must find defendant's intended threat was sufficient to cause sustained fear in a reasonable person. The People concede instructional error but argue the error was harmless as any reasonable juror would have concluded that the intended threat would cause sustained fear in a reasonable person. We agree with the People.

### A. Background

The trial court instructed the jury that for the crime of attempted criminal threat, "the People must prove that, one, the defendant took a direct but ineffective step toward committing a criminal threat and, two, the defendant intended to commit a criminal threat." The trial court further instructed:

> "To decide whether the defendant intended to commit a criminal threat, please refer to the separate instructions that I will give you on that crime.· The defendant may be guilty of attempt even if you conclude that a criminal threat was actually completed.

7.

"A criminal threat is a violation of Penal Code Section 422. To prove that a defendant is guilty of this crime, the People must prove that [1] the defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Deputy Martinez; [2] the defendant made the threat orally; [3] the defendant intended that his statement be understood as a threat and intended that it be communicated to Deputy Martinez; [4] the threat was so clear, immediate, unconditional, and specific that it communicated to Deputy Martinez a serious intention and the immediate prospect that the threat would be carried out; [5] the threat actually caused Deputy Martinez to be in sustained fear for his own safety; and, [6] Deputy Martinez's fear was reasonable under the circumstances."

In closing, the prosecutor argued that, although the crime was charged as an attempt, defendant completed the crime. Defendant put into action his plan to criminally threaten Deputy Martinez when defendant verbally said that he would kill Martinez, intended to kill Martinez, and intended to communicate to Martinez that he would kill him. The prosecutor told the jury that the threat was, on its face, an unambiguous threat to kill Martinez when defendant was released from jail. The prosecutor also argued that the threat was so clear, immediate, unconditional, and specific that it communicated to Deputy Martinez that defendant intended to kill him. Martinez testified that he was in sustained fear for his safety and, the prosecutor argued, Martinez's "fear was reasonable under the circumstances." The prosecutor told the jury that all the elements of a criminal threat had been met and that defendant was guilty of attempted criminal threat even if the jury concluded the crime had been completed. The prosecutor also told the jury that the crime was charged as an attempt should the jury conclude the threats did not actually cause Martinez to suffer sustained fear.

During closing argument, defense counsel argued that Martinez was not in sustained fear because (1) he wrote in his report that he was just in "fear" and not sustained fear; (2) Martinez was armed with a radio, gun, and baton; (3) Martinez knew that people get upset when they are being taken to jail; (4) defendant was restrained to the floor of the vehicle when he made the threats; and (5) Martinez did not take any steps that showed he was actually concerned for his safety. Defense counsel also argued that

8.

defendant did not threaten "immediate" harm because defendant said he would kill Martinez when he was released from jail.

## B. Law and Standard of Review

The law of criminal attempt applies to the offense of criminal threat (*People v. Toledo* (2001) 26 Cal.4th 221, 229–231) so that "under California law, there is a crime of attempted criminal threat" (*id.* at p. 235). *Toledo* explained the crime of attempted criminal threat encompasses situations where a defendant intends to commit a criminal threat "but is thwarted from completing the crime by some fortuity or unanticipated event." (*Id.* at p. 232.) An incomplete criminal threat includes scenarios where a defendant acts with the requisite intent but (1) a written threat is intercepted before delivery to the threatened person, (2) the victim does not understand the defendant's oral threat, or (3) the threat does not actually cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear. (*Id.* at p. 231.)

*Toledo* described the intent required for an attempted criminal threat as a specific intent "to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety." (*People v. Toledo*, *supra*, 26 Cal.4th at pp. 230–231.) To avoid substantial First Amendment concerns associated with criminalizing speech, the offense of attempted criminal threat requires proof that the defendant had a subjective intent to threaten and that the intended threat under the circumstances was sufficient to cause a reasonable person to be in sustained fear. (*People v. Chandler* (2014) 60 Cal.4th 508, 525 (*Chandler*).) "Accordingly, when a defendant is charged with attempted criminal threat, the jury must be instructed that the offense requires not only that the

defendant have an intent to threaten but also that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Ibid*.)

Where the trial court fails to instruct the jury as to an element of the offense, we reverse unless any error was harmless beyond a reasonable doubt. (*Chandler*, *supra*, 60 Cal.4th at p. 525, citing *Neder v. United States* (1999) 527 U.S. 1, 8–15 [applying harmless-error test for federal constitutional error—whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained— to trial court's failure to instruct on an element of a crime]; *Chapman v. California* (1967) 386 U.S. 18, partially overruled by *Brecht v. Abrahamson* (1993) 507 U.S. 619, 622–623 [holding that the standard "harmless beyond a reasonable doubt" is not applicable in habeas cases].)

## C.    Analysis

The People charged defendant in count 3 with attempted criminal threat. The court instructed the jury with CALCRIM No. 460 on the crime of making an attempted criminal threat. However, when the crime is attempted criminal threat, the court must add a third element, namely, that the jury must also determine if the intended criminal "threat [was] sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Chandler*, *supra*, 60 Cal.4th at p. 525; see Use Note to CALCRIM No. 460 (Feb. 2015 rev.) p. 246; Use Note to CALCRIM No. 1300 (Mar. 2018 rev.) pp. 1140–1141.) Here, the court failed to instruct as to the third element that required the jury to find the threat was sufficient to place a reasonable person in sustained fear. However, we conclude that the error was harmless beyond a reasonable doubt.

An instruction that omits an element of an offense is reversible error unless the error is harmless beyond a reasonable doubt. (*Chandler*, *supra*, 60 Cal.4th at p. 525.) In only a "narrow class of cases" will omitting an element be harmless beyond a reasonable doubt. (*Neder v. United States*, *supra*, 527 U.S. at p. 17, fn. 2.) In making that determination, we ask whether "defendant's threats were sufficient under the

10.

circumstances to cause a reasonable person to be in sustained fear" and whether a "reasonable juror could have concluded otherwise." (*Chandler*, at p. 526.) "[I]nstructional error is harmless [beyond a reasonable doubt] 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' " (*People v. Mil* (2012) 53 Cal.4th 400, 417.)

In *Chandler*, the defendant lived around the corner from the first victim. (*Chandler*, *supra*, 60 Cal.4th at p. 511.) In several incidents, occurring over several weeks, the defendant called the first victim profane names, reminded her that she lived alone, and threw tennis balls and pipes at her window. During one incident, the defendant walked up the first victim's street and said, " ' "Fuck you, bitch. I'm going to kill you." ' " Later, defendant sang, " 'somebody's watching me' " outside the second victim's residence where the first victim had taken refuge. (*Id.* at pp. 511–512.) The following day, the defendant approached the first victim and said, " 'I'm going to kill you bitch.' " (*Id.* at p. 512.) The defendant also threatened the second victim one night when he was outside her home swinging a golf club and said, " ' "I'm going to kill you, you fucking bitch." ' " (*Ibid.*)

The *Chandler* court concluded that no reasonable juror could have failed to find the defendant's threats sufficient under the circumstances to cause a reasonable person to be in sustained fear and found any error in failing to instruct the jury on the objective nature of the threat to be harmless beyond a reasonable doubt. (*Chandler*, *supra*, 60 Cal.4th at p. 525.) In so doing, *Chandler* relied upon the following factors: (1) neither the prosecution nor the defense suggested that the defendant could be convicted of attempted criminal threat based solely on his subjective intent to threaten; (2) the evidence did not suggest that the jury convicted on that basis since the defendant expressly threatened to kill both victims; and (3) the defense theory at trial did not contest the reasonableness of the victims' fear, but rather argued that there was reasonable doubt

11.

that the threats had been made and, if made, that the victims did not suffer actual or sustained fear. (*Ibid*.)

In the instant case, while traveling to the jail, defendant threatened to kill Martinez and said, "I will fucking kill you when I get out of jail, motherfucker. You will see, you fucking pig. I will get out soon. I will fucking kill you. You better watch your back, motherfucker." Upon reviewing the record, we rely on *Chandler* and conclude that no reasonable juror could have failed to find defendant's threats sufficient under the circumstances to cause a reasonable person to be in sustained fear and thus, any error is harmless.

We first note that, as in *Chandler*, neither the prosecution nor the defense ever suggested that defendant could be convicted of attempted criminal threat based solely on his subjective intent to threaten. The prosecutor argued that defendant completed the crime of criminal threat because defendant had uttered an explicit threat that communicated to Martinez the serious intent and immediate prospect that defendant would carry it out. The prosecutor further pointed out that Martinez was in sustained fear for his safety and his fear was reasonable under the circumstances. The prosecutor explained to the jury that they could convict defendant of attempt even though he completed the crime. The prosecutor further explained that if the jury reasonably doubted that Martinez was in sustained and actual fear because of defendant's threats, defendant was guilty of attempted criminal threat.

Furthermore, the evidence does not suggest that the jury convicted defendant based solely on his subjective intent to threaten since defendant voiced his express and unambiguous threat to kill Martinez. *Chandler* similarly relied upon the unambiguous words of the threat to conclude that the jury relied upon more than that defendant's subjective intent in convicting. (*Chandler*, *supra*, 60 Cal.4th at p. 525.)

Moreover, like *Chandler*, the defense theory at trial did not contest the reasonableness of Martinez's fear but argued reasonable doubt as to whether the threat

12.

actually caused Martinez to be afraid. For example, defense counsel argued in closing that Martinez did not describe his fear as "sustained" in his original report (writing only that he experienced fear) and failed to take proactive steps to protect himself after the threat. In addition, counsel disputed that Martinez experienced fear because Martinez acknowledged that suspects are commonly upset at being arrested, he himself was armed, and he was protected from defendant by the patrol car's front seat divider and defendant's restraints. Counsel then argued that defendant's threats spoke to his future action and, therefore, did not demonstrate an immediate prospect of being carried out. Defense counsel did not argue or present any evidence showing that the "intended [criminal] threat [was] [in]sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Chandler*, *supra*, 60 Cal.4th at p. 525; see CALCRIM No. 460.)

Overwhelming evidence also showed that defendant's threats to kill Martinez would have caused a reasonable person in his position to be in sustained fear. Martinez knew that defendant had already physically assaulted and attempted to rape the victim in a public park in broad daylight. The jury convicted defendant of that offense. Martinez also knew that defendant had violently resisted transportation to jail by deliberately slamming his head into the patrol car divider and continuing to kick the interior despite having split his head open and bleeding profusely. Martinez participated in a 10-to-15-minute struggle with defendant that required Martinez, another deputy, and two security guards to restrain defendant. After being placed in the patrol car, defendant continued to hit his injured head against the divider and kick the patrol car until finally Martinez restrained him to the floor of the vehicle.

Martinez testified that while he had previously received threats to his safety from other suspects, he believed defendant seriously intended to execute the threats and was in actual and sustained fear as a result. Martinez's belief that defendant intended to kill him when he was released from custody is supported by defendant's violence in attacking the victim and resisting arrest. Defendant's actions exhibited a lack of care for himself that

justified Martinez's belief that if defendant "had no care for himself," "that [defendant] would do the same to [Martinez] or worse." Martinez's experience in encountering prior suspects in their community and the size of their community added to the likeliness of defendant carrying out the threat.

Defendant argues that Martinez was not actually in sustained fear from defendant because Martinez had weapons to protect himself. However, police officers are injured and killed despite the weapons they carry, and a reasonable person would still be in sustained fear of injury from someone who has threated to kill them, even if they might be able to defend themselves if the circumstances should permit. While defendant was restrained when he made his threat, a reasonable person would not discount a threat to be killed made by someone in custody when the threat specifically states that the threat will be acted upon when the individual is released. Defendant argues that Martinez did not change his patrol area or shift, but the evidence did not show that defendant was ever released from custody necessitating such precautions.

Defendant relies on *People v. Jackson* (2009) 178 Cal.App.4th 590 (*Jackson*) to contend that the court's instructional error prejudiced him. In *Jackson*, the victims attempted to retrieve a key to their rental residence and discovered the defendant trespassing there. (*Id*. at p. 594.) While the defendant initially vacated the residence, he became agitated and said something about " 'blow[ing] [their] heads off' and 'chop[ping] [their] heads off' " and referred to a rifle. (*Ibid*.) The victims called the police from inside the residence and the defendant sat outside. (*Id*. at pp. 594–595.) The jury convicted the defendant of attempted criminal threat but had not been instructed to find that the defendant's intended threat must have been sufficient to reasonably cause the person to suffer sustained fear. (*Id*. at p. 595.) The court found that the failure to instruct on the element was not harmless. (*Id*. at p. 600.)

*Chandler* reviewed *Jackson* and distinguished it. (*Chandler*, *supra*, 60 Cal.4th at p. 526.) *Chandler* noted that in *Jackson* the victims were inside the residence when the

14.

defendant threatened to blow and chop their heads off. (*Ibid.*, citing *Jackson*, *supra*, 178 Cal.App.4th at p. 594.) In reversing the conviction, *Jackson* reasoned that "the jury might have concluded, since [the victims] were safely inside the house with a telephone to call the police while defendant sat out front, or since defendant's threats were so outlandish, that defendant's statements could not reasonably have caused the victims to suffer sustained fear." (*Jackson*, at p. 600.) "[In *Chandler*], by contrast, [the victims] testified that [the] defendant, a neighbor, made explicit threats that he was going to kill each of them, and [the] defendant made the threats while face-to-face with the victims (and, in [one victim's case], while swinging a golf club) on the street where the victims lived. [¶] In sum, [the] defendant's threats were sufficient under the circumstances to cause a reasonable person to be in sustained fear—indeed, [the] defendant did not argue otherwise at trial—and no reasonable juror could have concluded otherwise." (*Chandler*, at p. 526.)

The instant case is more like *Chandler* than *Jackson*. Like the defendant in *Chandler*, defendant explicitly and unambiguously threatened to kill Martinez. In contrast to *Jackson*, the evidence here did not permit the jury to find that defendant's threats to kill Martinez when freed from custody were, under the circumstances, so outlandish or unreasonable that they were insufficient to cause a reasonable person in Martinez's position to be in sustained fear.

Defendant also threatened Martinez face-to-face. Although defendant was restrained, this did not lessen the impact of a threat that, by its terms, would only occur once defendant was no longer in custody. As in *Chandler*, defense counsel did not argue that defendant's threats were not sufficient under the circumstances to cause a reasonable person to be in sustained fear. Instead, like the defense counsel in *Chandler*, counsel here argued that there was reasonable doubt as to whether Martinez was credible when he testified that he suffered actual and sustained fear, and counsel challenged the immediate nature of the threat.

15.

For these reasons, we conclude defendant's "threats were sufficient under the circumstances to cause a reasonable person to be in sustained fear … and no reasonable juror could have concluded otherwise." (*Chandler*, *supra*, 60 Cal.4th at p. 526.) Thus, in accord with *Chandler*, we conclude that the trial court's instructional error was harmless beyond a reasonable doubt.

**II.** ***The trial court did orally impose a criminal conviction assessment as to count 4, but the abstract of judgment fails to set forth the components of the $930 penalty assessment.***

### A. Count 4's Criminal Conviction Assessment

Defendant argues that the abstract of judgment erroneously reflects a $30 criminal conviction assessment (Gov. Code, § 70373) as to count 4 that the trial court did not impose orally. The People agree but argue that we may impose it as a mandatory penalty required as part of defendant's lawful sentence. We have reviewed the sentencing transcript and conclude that the parties are factually incorrect as the trial court did specifically impose the disputed assessment.

The trial court conducted defendant's sentencing hearing on July 23, 2019. As to count 4, the trial court sentenced defendant as follows:

"Count 4, the misdemeanor count. Defendant's application for probation is denied. He is sentenced to the Kern County Jail for a period of one year. Said sentence to be served concurrent with the sentence imposed above. Also pay a fee of $40.00 per Penal Code Section 1465.8."

Later in the hearing, the probation officer advised the court that it neglected to pronounce "the $30.00 fine pursuant to Government Code Section 70373" on page 18 of the probation report (a fee applicable to count 4). The court replied:

"Thank you. [¶] I need to go back and add one additional order as part of the sentencing to Count 4. I am also ordering that the defendant pay a fee of $30.00 per Government Code Section 70373. I had failed to include that in my sentence on Count 4."

Therefore, because the oral pronouncement included the $30 criminal conviction assessment as to count 4, the abstract of judgment correctly reflects it.

16.

## B. Components of the $930 Penalty Assessment

Defendant and the People agree that the abstract of judgment should include, but does not, the components of the $930 penalty assessment as to count 1. We agree.

As to count 1, the trial court ordered defendant "to pay a fine of $300.00 per Penal Code Section 290.3, plus a penalty assessment of $930.00 …. And [it] adopt[ed] the calculation of the penalty assessment set forth in the probation report." The probation report identified the components of the $930 penalty assessment as a $300 state penalty assessment (§ 1464, subd. (a)), a $210 county assessment (Gov. Code, § 76000, subd. (a)), a $30 DNA fund assessment (Gov. Code, § 76104.6), a $120 state only DNA fund assessment (Gov. Code, § 76104.7), a $60 EMS fund assessment (Gov. Code, § 76000.5), a $150 court construction penalty (Gov. Code, § 70372, subd. (a)), and a $60 state surcharge (§ 1465.7).

The minutes of the sentencing hearing describes these assessments as "defendant to pay fine of $300.00 plus penalty assessment in the amount of $930 pursuant to PC 290.3." (Some capitalization omitted.) The abstract of judgment describes these fines and fees as a "fine of $300. Plus P/A $930 per PC 290.3."[3]

Case law holds "that penalty assessments must be (1) specified in the court's oral pronouncement of judgment, and (2) specifically listed in the abstract of judgment." (*People v. Hamed* (2013) 221 Cal.App.4th 928, 937, citing *People v. High* (2004) 119 Cal.App.4th 1192, 1200–1201.) "If the abstract does not specify the amount of each fine, the Department of Corrections cannot fulfill its statutory duty to collect and forward deductions from prisoner wages to the appropriate agency. [Citation.] At a minimum, the inclusion of all fines and fees in the abstract may assist state and local agencies in their collection efforts." (*High*, at p. 1200.)

---

[3] The trial court imposed the $300 fine pursuant to section 290.3, but that section is not the statutory authority for the $930 penalty assessment.

The trial court's reference to the probation report for the components of the assessment, and its incorporation thereof, was proper. (See *People v. Voit* (2011) 200 Cal.App.4th 1353, 1373; *People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) Nevertheless, after oral pronouncement of the sentence occurs, "[t]he responsibility then falls to the trial court clerk to specify the penalties and surcharge in appropriate amounts in the minutes and, more importantly, the abstract of judgment." (*Sharret*, at p. 864; see *Voit*, at p. 1373.) Neither the minute order nor the abstract of judgment specify the components of the $930 penalty assessment. Therefore, we remand and direct the trial court to correct both the minute order and the abstract of judgment to itemize the components of the $930 penalty assessment and to indicate that the $300 fine (and not the $930 penalty assessment) as to count 1 was ordered pursuant to section 290.3. (See *People v. High*, *supra*, 119 Cal.App.4th at p. 1200.)

## DISPOSITION

The matter is remanded to the trial court with directions to amend the sentencing minute order and abstract of judgment to reflect the $300 fine as to count 1 was imposed pursuant to section 290.3 and to set forth the individual components of the $930 penalty assessment both by amounts and statutory bases. The trial court is further directed to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation. As amended, the judgment is affirmed.


HILL, P. J.

WE CONCUR:


POOCHIGIAN, J.


SMITH, J.

18.